## Horn et al. v. Dreschel et al.

Oct. 24, 1944.

428

C. E. Rankin for appellants R. L. Horn and Beulah Horn.

Leo T. Wolford for appellant Louisville Baptist Orphans' Home.

Steinfeld & Steinfeld for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Morris Anderson Drury died on the thirtieth day of November, 1938; his widow, then twenty-four years of age, and five children survived him; one child anteceded him in death. Upon his death, the widow and children were in destitute circumstances; in fact, for a long time previous to his death, Mr. Drury had been ill, and he and his family were dependent upon charity. Upon advice of the pastor of her church, Mrs. Drury requested the Louisville Baptist Orphans' Home, of Louisville, to assume the custody of the four older children. Accordingly, on the twenty-sixth day of January, 1939, Mrs. Drury entered into a contract with the Home in respect to each of the four children. With the exception of the names and ages of the children, the contracts are identical. The one involving the custody of Jacqueline, the oldest child, is as follows:

"Commitment to

The Louisville Baptist Orphans' Home

"I, Thelma Drury, of Louisville, County of Jefferson, State of Kentucky; my post office address is Louisville, County of Jefferson, State of Kentucky; having the rightful custody and control of Jacqueline Drury do

hereby commit the said Jacqueline Drury to the custody and control of The Louisville Baptist Orphans' Home, of Louisville, Ky., to be cared for and disposed of by the Home, in any way contemplated by its charter and By-Laws. The said Jacqueline Drury is of sound mind, body and health and was born on the 4 day of October 1931 at Louisville County of Jefferson state of Kentucky, her father was Morris Anderson Drury late of Louisville, County of Jefferson, State of Kentucky and was a member of ———— Church, at ———— County of ————, State of ————, her mother is Thelma Drury, nee Davis, of Louisville, County of Jefferson, State of Kentucky and she is a member of Grace Baptist Church, at Louisville, County of Jefferson, State of Kentucky.

"Witness my hand, this 26 day of January 1939.

"Thelma Drury."

It was conceded that appellant, the Louisville Baptist Orphans' Home, was incorporated by an act of the General Assembly of January 27, 1870; and, on January 26, 1939, it had the power to receive into its custody and control the children involved in this action. It is conceded, likewise, that it had the power, under Section 2591 et seq., Carroll's Kentucky Statutes, which was in force on May 17, 1939, to enter into contracts of apprenticeship with third parties, and thus transfer custody and control of the children apprenticed. On the seventeenth day of May, 1939, the Home entered into contracts of apprenticeship with appellants, R. L. Horn and his wife, Beulah Horn, whereby the Home gave to the Horns the care and custody of Jacqueline and Kenneth Drury. The Horns bound themselves to provide faithful and proper nurture, training, maintenance, and education of the children; to treat the children humanely in all respects; but did not obligate themselves to adopt the children as their heirs. Upon the execution of the contracts, the Horns took the children to their home near Harrodsburg, in Mercer County, where since continuously they have remained. On July 15, 1940, Mrs. Drury intermarried with her co-appellee, William E. Dreschel. In August of that year the Dreschels regained the custody of Lancelot, the only one of the Drury children remaining in the custody of the Home. In October, 1943, after the children had lived with the Horns approximately four and one-half years, Mrs. Dreschel demanded their custody from the Horns. The request was refused; thereupon, the

Dreschels filed a petition in equity against the Home and the Horns, alleging the execution of the contracts of commitment and the articles of apprenticeship to have been invalid. The petition contained the further allegation that the best interests of the children would be served by committing their custody and control to the petitioners. By amendment, the petitioners alleged the contracts of commitment of the children to the Home were executed under such distressing conditions as not to be binding upon Mrs. Dreschel. Appellants, defendants below, traversed the allegation in respect to the best interests of the children; asserted the validity of the contracts of commitment and the articles of apprenticeship. The Horns separately alleged that, by reason of Mrs. Dreschel's permitting the children to remain with them four and one-half years, she was estopped to reclaim the custody of the children. Their answer contained the further allegation that they had acted in good faith in receiving the children under the articles of apprenticeship, without knowledge of any infirmity therein; and asked that they be adjudged to be in the position of innocent persons acting upon a writing valid upon its face, without notice of infirmity. Appellees have abandoned their contention in respect to the validity of the contracts of commitment and articles of apprenticeship, and now rely solely upon the contention that the best interests of the children would be served by awarding them their custody and control. Without waiving their alleged right of custody by reason of the articles of apprenticeship and contracts of commitment, appellants vigorously contend that the best interests of the children will be served by permitting them to remain in their custody. Having arrived at the conclusion hereinafter expressed, it is unnecessary for us to determine the contractual rights of the parties.

At the time of the commencement of the action, Jacqueline was twelve years of age; she became thirteen on October 4, 1944. Kenneth will be eleven February 15, 1945. Both children have been with the Horns five and one-half years. Their foster parents live on a large farm three and one-half miles from Harrodsburg, in a ten room house, with electrical facilities. The children have a playroom and separate private bedrooms, and are treated by the Horns with the love and affection of natural parents. They are well clothed, and are re-

quired to attend school, Sunday School, and Church regularly. The school bus stops at the entrance of their farm on the public highway, and delivers them at the same point after school. They have been taught to perform light duties around the farm, and are happy in their work. They are well nurtured; are in fine physical condition; and both separately expressed their desire to remain with their foster parents. Jacqueline remembers her mother and her life at the Orphans' Home; Kenneth does not. It was shown that Mr. Horn is worth at least $25,000 over and above all his debts, and that Mrs. Horn has a potential inheritance of approximately the same amount of money. Whilst the Horns have not adopted either of the children, Mrs. Horn, previous to any controversy over the children, executed a will devising a life interest in all her property to her husband, and upon his death, after the payment of two specific bequests, devised the remainder in equal shares to the children. The parties to the action, the Dreschels and the Horns alike, are proven to be persons of fine character. Mr. Dreschel owns his own home in Jefferson County, consisting of a house containing seven rooms, with all modern improvements, evaluated by him at $6,000. In addition to that, he owns a half interest in two other pieces of property, the full values of which are estimated to be $3,000 and $2,500 respectively. He has life insurance payable to his wife, the amount of which does not appear in the record. At present he is earning between $50 and $55 per week; but before the war he was earning only $125 per month. He has "a little money in the bank". One child has been born to the Dreschels; their family is now composed of their common child and two of the Drury children. It is not unreasonable to suppose, in view of the record, that more children will be born to the Dreschels; and it is not unreasonable to suppose that, with the cessation of war activity, Mr. Dreschel's earning power will be reduced to its former level.

Of all the responsibilities resting upon the courts, none is more delicate or is more difficult to determine than that of the custody of children. The duty of denying a mother the custody of her child is a very solemn one; and it will not be exercised unless it is clear that the rights of other parties to the custody are paramount to the right of the mother, or denial of such right will inure to the benefit of the child. Where other cus-

todians have nutured the child from the time the child's memory "runneth not to the contrary", and conditions are as satisfactory as is disclosed by this record, one who proposes to change the situation necessarily assumes the burden of proving almost beyond peradventure that the change will promote the welfare of the child; and, unless the change proposed is clearly exhibited to be to the child's best interests, the status should not be disturbed, provided the legal rights of the parties may be preserved. Appellees do not claim a greater legal right to the custody of the children than is possessed by appellants. They rest their cause solely upon the proposition that the change is for the best interests of the children. In determining the question, not only must present circumstances be considered, but those of the future must be anticipated, if it is reasonable to enter upon a prophecy in that respect. One of the most vital elements to be considered is that of education. At the present time, there is no reason to believe that the children would not receive a grade school and even a high school education, in the custody of either of the parties. But, looking to the future, it is our opinion that Jacqueline's and Kenneth's prospects of a higher education are far greater if they should be permitted to remain in the custody of the Horns. If permitted to resume the custody of the children here involved, the Dreschels will have in their care and control five children at present, probably more in the future. It is far more likely that Mr. Dreschel will revert to his former earning capacity at the termination of war activities than that he will maintain his present status in that respect. We hope that this does not occur; but if it does, it is unreasonable to suppose that he will be in position to give all five of the children a college education. On the other hand, there is no reason to suppose that the economic situation in the Horn household will become strained; in fact, the prospects of its improvement are very great. Another consideration seems to us to be of paramount importance—The children now have been established in the Horn household for a period of five and one-half years, at the most impressionable period of their lives. The relationship has instilled into the characters of the children a respect for and confidence in their foster parents which likely could not be transferred to other guardians, no matter how worthy they may be. In addition to this they have formed

friendships with others of their own age which would be cruelly terminated by removing them from their present environs. A drastic change at this stage in their lives would create confusion in their minds which would be difficult to diffuse. The average girl of thirteen is shy, diffident, and oft-times unwont to share her confidences with one who has not had an opportunity over a long period of time to demonstrate a sympathetic understanding. Nor can we ignore the desire of the children that they be permitted to remain in their present home. Jacqueline, at least, is of sufficient age and mentality to be consulted in the matter. Cummins v. Bird, 230 Ky. 296, 19 S. W. 2d 959. Under these conditions, and considering the question solely in the light of the welfare of the children, we are not constrained to alter the situation at this time. Should conditions develop warranting a change, the matter may then be determined in the light of the changed conditions. Under the present showing, clearly it is our duty to permit the children to remain where they are.

The judgment is reversed, with directions that it be set aside and another entered in conformity with this opinion.

Whole court sitting.