**Juanita PAYNTER, Appellant,**

**v.**

**Louis SMITH et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 18, 1972.

Rehearing Denied June 30, 1972.

Donald L. Wood, Fox, Wood & Wood, Maysville, for appellant.

John H. Clarke, Jr., Clarke & Clarke, Maysville, for appellees.

CATINNA, Commissioner.

Juanita Paynter appeals from a judgment awarding the custody of her eight-year-old daughter, Susan Jo Paynter, to Louis Smith and Grace Smith, great-uncle and great-aunt of Susan Jo Paynter.

Jerry Paynter, after his marriage to Juanita, got a job on the Smoot Dairy Farm and moved into a tenant house located on the farm. Louis Smith was also employed on the farm, he and his wife Grace living in an adjoining tenant house. Grace Smith was an aunt of Jerry Paynter.

When the Paynters' first child, Susan Jo, was born the Smiths rendered them almost daily assistance. Some fourteen months later a second child, a son, was born. Susan Jo was cared for by the Smiths in their home during the days that followed. The son became ill requiring extensive medical care and rest. Susan Jo then became a permanent resident of the Smith home, residing there from the time she was fourteen months old until the present. Susan Jo visited her parents infrequently, the visits in most instances being limited to an occasional weekend. Her parents, or one of them, visited her on the average of three to four times a year.

No effort was made by the Paynters to contribute toward the support of Susan Jo. Their contributions were modest presents at Christmas, on birthdays, and an occasional dress. Nothing was ever paid to the Smiths to help pay the costs of maintaining Susan Jo.

After the birth of the second child, the Paynters moved from the Smoot farm, leaving Susan Jo with the Smiths. Jerry held several jobs in various sections of Kentucky and Ohio, eventually settling at Georgetown, Ohio, where he and Juanita purchased a home.

Shortly after moving to Georgetown, Ohio, Jerry began exhibiting abnormal sexual conduct, dressing in female clothes. Domestic difficulties developed, and a divorce action was filed by Juanita in the Court of Common Pleas, Brown County, Ohio. Both parties were represented by counsel. A judgment was entered on May 10, 1971, granting Juanita a divorce and awarding her custody of the two children, Susan Jo Paynter and Jerry Wayne Paynter, Jr. Jerry was ordered to pay Juanita the sum of $12 per week for the support of each child while they were in her physical custody and possession. Susan Jo was not in Ohio at any time during the divorce proceeding, but remained with the Smiths on the Smoot farm in Mason County, Kentucky.

On the same day, May 10, 1971, Juanita journeyed to the Smith home and demanded custody of Susan Jo and was refused. On May 11 she filed her petition for a writ of habeas corpus in the Mason Circuit Court. On May 24, 1971, Louis Smith and Grace Smith filed a "Complaint to Secure Custody of Minor Child." No responsive pleadings were filed by any of the parties; however, the father, Jerry Paynter, did file a pleading entering his appearance and requesting the court to grant custody of Susan Jo to the Smiths. The two proceedings were consolidated for the purpose of trial.

Evidence introduced at the trial pictured Juanita Paynter as irresponsible and careless, a very poor housekeeper who seldom washed dishes or cooking utensils, allowing dirty dishes and bits of food to accumulate until the food was spoiled to the extent that it had decomposed. She allowed dirty clothes to accumulate in closets to a depth of 2½ feet, as well as in the corners of the rooms. She would buy new clothes rather than wash the dirty ones. She neglected to care for dirty diapers so that when they were washed bits of solid human waste would be found in the tub of the washing machine. Her house was always dirty to the extent of being filthy, and there was such an odor that it would make a person sick.

Juanita did not belong to a church, nor regularly attend any church. She did not

take the boy to church because sometimes she worked on Sunday.

Witnesses also testified that Juanita was a good housekeeper and an attentive mother.

Juanita no longer keeps house as she now lives with her mother and father, along with two adult brothers, in a home kept and maintained by them.

Louis Smith and Grace Smith are pictured as hard-working Christian people. Louis had worked on the Smoot farm for some twenty-five years, was in charge of a dairy herd, and the owner of a portion of the dairy stock. They are members of the Minerva Methodist Church, and Susan Jo participates in the activity of the church. Grace belongs to the Minerva Garden Club and is active in community affairs. The Smiths are deeply in love with Susan Jo, she appearing to be the very center of their life.

Susan Jo is pictured as being happy and well adjusted in the Smith home, having a good and healthy relationship with the Smiths and other people in the community. She attends school regularly and makes better-than-average grades.

The trial court, in denying the application for writ of habeas corpus and awarding the custody of Susan Jo Paynter to Louis Smith and Grace Smith, found as follows:

"The court finds as a matter of fact that the apparent best interest and welfare of the child will be served by maintaining the status quo as it has now been established by the conduct of the parties and the infant child, Susan Jo Paynter, is awarded to the custody of Louis Smith and Grace Smith."

There was no evidence that a change in the custody of Susan Jo at this time would promote her welfare or be to her best interest.

In Manion v. Cofer, Ky., 459 S.W.2d 76 (1970), the question of custody is discussed as follows:

"There is an abundance of authority for the proposition that in a child custody contest between a natural parent and a non-parent the non-parent must prove the parent's unfitness in order to prevail. See James v. James, Ky., 457 S.W.2d 261 (decided June 26, 1970), in which it was held 'that the natural parent is entitled to the custody of his child unless it is shown that the natural parent (1) is unsuitable to have custody, or (2) is harmful to the child, or (3) has contracted to give his child away, or (4) is clearly estopped to claim custody.'"

The court makes the following observation in the case of Horn v. Dreschel, 298 Ky. 427, 183 S.W.2d 22 (1944):

"* * * The duty of denying a mother the custody of her child is a very solemn one; and it will not be exercised unless it is clear that the rights of other parties to the custody are paramount to the right of the mother, or denial of such right will inure to the benefit of the child. Where other custodians have nurtured the child from the time the child's memory 'runneth not to the contrary,' and conditions are satisfactory as is disclosed by this record, one who proposes to change the situation necessarily assumes the burden of proving almost beyond peradventure that the change will promote the welfare of the child; and, unless the change proposed is clearly exhibited to be to the child's best interests, the status should not be disturbed, provided the legal rights of the parties may be preserved."

Shaw v. Graham, Ky., 310 S.W.2d 522 (1958), states:

"With respect to the custody of the children, we have held in numerous cases that where a parent has consigned their

care to their grandparents, who are suitable for discharging the trust, and has acquiesced in that commitment, he or she may not take them away without first convincing the court that it would be to the best interest of the children that it be done."

See also Fitzgerald v. Davidson, Ky., 473 S.W.2d 109 (1971), in which the rule is stated as follows:

"Rose v. Ledford, 306 Ky. 662, 208 S. W.2d 957 (1948), as considered in Belderes v. Jones et al., 309 Ky. 66, 216 S. W.2d 39 (1948), demonstrated that where a natural parent has voluntarily relinquished the actual permanent custody of a child to another, if the parent claims the right to a return of custody of the child to him he must show that the return of custody will not be harmful to the child or detrimental to the child's best interest."

Finally, the findings of the trial court are abundantly supported by the evidence. In Wells v. Wells, Ky., 412 S.W.2d 568 (1967), we state:

"The trial court heard the evidence and saw the witnesses. It is in a better position than the appellate court to evaluate the situation. * * * The court below made findings of fact which may be set aside only if clearly erroneous. * * * We do not find that they are. They are not 'manifestly against the weight of evidence.' * * * A reversal may not be predicated on mere doubt as to the correctness of the decision. * * * When the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the chancellor." (Citations omitted.)

We conclude the court properly adjudged that the custody of the child should remain in her great-uncle and great-aunt.

The judgment is affirmed.

All concur.