Raymond L. COX and Margaret Cox, his wife, Appellants,

v.

Donnie BRAMBLET, Appellee.

Court of Appeals of Kentucky.

March 16, 1973.

Charles L. Hobson, Frankfort, for appellants.

William E. Johnson, Frankfort, for appellee.

STEINFELD, Justice.

Appellants Raymond L. Cox and Margaret Cox, husband and wife, have appealed from a judgment entered on August 4, 1972, awarding the custody and control of Stephanie Kay Bramblet to her father, appellee Donnie Bramblet, and removing her from the home of Mr. and Mrs. Cox and their two children. Stephanie, who is a second cousin of Mr. Cox, had lived with the Cox family since October 31, 1969. She was born December 28, 1962. Custody of Stephanie was before this court in

Bramblet v. Cox, Ky., 461 S.W.2d 349 (1970), in which we affirmed the trial court's rejection of the attempt of Stephanie's father to gain her possession from Mr. and Mr. Cox. Bramblet had been indicted and was awaiting trial for the murder of Linda Bramblet, who was his wife and Stephanie's mother. Later Bramblet was acquitted, and he promptly sought to gain custody of his child. The Coxes gained possession of Stephanie when Bramblet was in custody on the murder charge. Her father had not abandoned her nor had he authorized the Coxes to take her.

Stephanie, who had witnessed the murder, testified at a preliminary hearing concerning the identity of the assailant of her mother as follows:

"Q 77. Did he look like your daddy?

A. Yes.

Q 78. Did it (sic) sound like your daddy?

A. No."

At the custody hearing Stephanie testified that she would prefer to remain with Mr. and Mrs. Cox rather than to go live with her father in the home of his parents, and that she was "just a little bit" afraid of her father. She told a child psychiatrist, Dr. Robert G. Aug, who conversed with her many times, " * * * that she wanted to stay with the Coxs (sic) and she really did love them." The psychiatrist unequivocally expressed the opinion that the better arrangement would be for Stephanie to remain with Mr. and Mrs. Cox because she considers them her family. However, he admitted that his conclusions were based upon inconclusive information. The opinion of this witness was advisory and certainly helpful to the chancellor, but was not binding on him. 32 C.J.S. Evidence § 569(3), p. 621. Cf. Head v. Russell, Ky., 307 S.W.2d 557 (1957); York's Ancillary Adm'r v. Bromley, 286 Ky. 533, 151 S.W.2d 28 (1941).

Appellants introduced proof attacking the fitness of Bramblet to have the child. Specifically, they attempted to depict him as untruthful and unreliable and they related instances to establish these characteristics. They referred to testimony in the murder trial that he ran from the home of his estranged wife just before she was murdered when he heard a rattle at the front door, rather than remain there and protect her and his child. Bramblet countered by telling that his wife had asked him to leave and that he had no reason to suspect they were in danger. There was testimony indicating that Bramblet had threatened to kill his deceased wife and had solicited the help of a friend to do this, and that there had been many instances of his mistreatment of her, but this too was denied. Bramblet explained that he had attempted to effect a reconciliation with his wife and that on the night she was murdered he had gone to see her for amorous purposes.

The Coxes introduced evidence, including divorce-case testimony of Stephanie's mother, that Bramblet had ignored Stephanie, had disregarded her pleas, and had never shown any love for her. They contend that Bramblet's parents are old, not in good health, and that while Bramblet was living with them at the time of the hearing there was indication that he would not reside there very long and they would not be helpful in taking care of Stephanie, an important consideration because Bramblet was unmarried and working full time.

Neighbors, friends and relatives all testified that Bramblet was a fine man. He was 29 years-of-age, enjoyed good health, and had been employed for 8 consecutive years at Rand-McNally Company, where he received regular promotions. His earnings were $275 per week for a normal 40-hour work week and frequently he made as much as $75 per week additional for overtime. He has supplemented his earnings with farming activities and is the owner of a house and lot in Frankfort. The neighbors told of his sobriety, industry, honesty,

helpfulness to them and to others, and they described him as a responsible person. Proof indicated Stephanie's love for her paternal grandmother; that during the lifetime of her mother and thereafter Stephanie made frequent visits to the Bramblet farm, which she enjoyed.

While Stephanie was in the custody of the Coxes, pursuant to court order, her father was permitted to visit her, which he did on all authorized occasions excepting two; one of these being because of illness and the other on the Sunday following his acquittal of the murder charge. He stayed away on this latter occasion on advice of his counsel. He made inquiry from time to time as to how Stephanie was doing in school. Bramblet and others testified of the love existing between him and his daughter and of the warm relationship between them.

■ Although the acquittal of Bramblet bars imposition of criminal penalties, it was not controlling on the chancellor in deciding whether Stephanie should be returned to the custody of her surviving parent. The facts surrounding the murder charge as they affected Stephanie were appropriate considerations in the custody action. Other considerations were the psychological impact of her qualified opinion that it was her father who assaulted her mother, her love and affection for Mr. and Mrs. Cox, and their unquestioned qualifications to raise the child. There is a wrongful-death suit pending against Bramblet for the killing of his wife and Stephanie may be a material witness. This too is a subject to be placed on the scales along with all other facts and considerations in determining the fitness of the father and the best interest of the child.

The Coxes argue that all the evidence shows that Stephanie is afraid of her father and that the chancellor, having failed to so find, committed reversible error. We do not accept the assertion that all the evidence is one way. Bramblet told of the warm relations which existed between him

and his child. Bramblet's parents and his sisters stated that father and child displayed reciprocal love. The two land-title cases cited by appellants, Creech v. Miniard, Ky., 408 S.W.2d 432 (1966), and Ken-Tex Exploration Co. v. Conner, Ky., 251 S.W.2d 280 (1952), provide appellants no refuge. Creech held that the scope of appellate review is to ascertain whether sufficient competent evidence supported the judgment. Here it did. Ken-Tex opines that this court " * * * will examine the evidence in an equity action and reverse the judgment when convinced the chancellor has erred." We did—he did not.

■ In the findings of fact the trial court wrote " * * * the burden of proof is upon defendants (Coxes) in this case to show that Donnie is less suited to the trust. This they have failed to do and thus all other things being equal, the blood relationship prevails and the parent wins. Manion v. Cofer, Ky., 459 S.W.2d 76." The Manion rule, which was reaffirmed in Fitzgerald v. Davidson, Ky., 473 S.W.2d 109 (1971), applies when there has been voluntary surrender or court order taking the child from its parent. Although restoration of Stephanie was denied in Bramblet v. Cox, supra, the obstacle on which the change of custody denial was predicated was removed. The Manion and Fitzgerald situations did not abide here. Cf. James v. James, Ky., 457 S.W.2d 261 (1970). The record shows that Bramblet assumed the burden of persuasion and demonstrated his fitness for the trust and the absence of detriment to the child. The Coxes then attempted to refute that proof and to show that Stephanie's best interest would result from her remaining with them. With this full development of the facts, the above statement from the findings of facts was non-prejudicial.

KRS 405.020(1) provides that:

"The father and mother shall have the joint custody, nature and education of

their minor children. If either of the parents dies, the survivor, if suited to the trust, shall have the custody, nurture and education of the minor children."

This statute was considered in Reynardus v. Garcia, Ky., 437 S.W.2d 740 (1968), and the law was discussed in Mayfield v. Haggard, Ky., 490 S.W.2d 777 (decided December 15, 1972). The same chancellor who presided in the first custody case (461 S.W.2d 349) heard proof for two days but waited about one year before reaching a decision. His findings of fact showed careful consideration of every point raised, and he concluded that the father was suited to the trust of having custody and control of his daughter and that her best interest would be served by returning her to him. His ruling followed the rationale of James v. James, Ky., 457 S.W.2d 261 (1970).

■ CR 52.01 provides that the appellate court will not set aside findings of fact unless they are found to be clearly erroneous. Wells v. Wells, Ky., 412 S.W.2d 568 (1967). The chancellor, in determining what was to the best interest of the child, could have left her with the Coxes, who are fine people. Horn v. Dreschel, 298 Ky. 427, 183 S.W.2d 22 (1944); Paynter v. Smith, Ky., 481 S.W.2d 270 (1972). Whether we would have reached the same conclusion as the chancellor did is not the question—it is whether we consider the findings clearly erroneous. We do not.

■ The Coxes promptly moved to vacate the judgment or, alternately, to conduct further hearings. These requests were denied, which they contend was an abuse of discretion. Stephanie had reached ten years of age, therefore they say she should have been recalled for an expression of her desires. The wishes of children are of interest when their custody is in issue. Sharp v. Sharp, Ky., 491 S.W.2d 639 (decided March 2, 1973). The reopening of this case for additional proof was within the sound discretion of the trial court. Insko v. Cummins, Ky., 423 S.W.2d 261 (1968). We detect no abuse of discretion or error in denying these requests.

■ We are mindful of our rule that custody " * * * judgments are not final but may be changed or modified at any time should the welfare of the (child) justify it", (Griffith v. Allen, Ky., 472 S.W.2d 253 (1971)), and we realize that the unusual circumstances existing here may require further consideration by the court. However, at this time we are not persuaded that the decision should have been different.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

PALMORE, C. J., and MILLIKEN, REED, STEINFELD and STEPHENSON, JJ., concurring.

OSBORNE, J., concurs in results only and files separate concurring opinion.

OSBORNE, Justice (concurring).

I concur in the results reached by the majority opinion, however I believe KRS 405.020(1) concludes the matter.