**Thurlan E. WOODRUM, Appellant,**

v.

**Mrs. Milton DUNN and Patsy Ann Woodrum (Now Watson), Appellees.**

Court of Appeals of Kentucky.

Feb. 15, 1974.

Rehearing Denied May 10, 1974.

Elwood Rosenbaum, Rosenbaum & Smith, Lexington, for appellant.

Frank Gilliam, Gilliam, Bush & Weinberg, Lexington, for appellees.

JONES, Justice.

Thurlan E. Woodrum appeals from a judgment of the Fayette Circuit Court awarding the custody of his eight-year-old daughter, Jacqueline Thurlan, to Mrs. Milton Dunn, the maternal grandmother.

Appellant, Thurlan E. Woodrum, divorced his wife, Patsy Ann, in July 1969, while he was in military service. Custody of their infant daughter had been awarded to the mother, Patsy Ann, in an interlocutory decree entered of record on June 28, 1967. Thurlan was directed to pay for the support of his infant daughter the sum of $15.00 per week. At the time of the judgment Patsy Ann and the child resided in the home of Mr. and Mrs. Milton Dunn, the maternal grandparents; this is the only home this eight-year-old child has had.

Thurlan failed to make the child support payments as required by the court; and from August 29, 1967 through June 19, 1970, he was cited for contempt for this failure on seven different occasions. Thurlan admitted in a deposition on August 20, 1973, that he had failed to make the payments:

"Q. And you were approximately $5,000.00 behind in child support payments?"

"A. I guess."

Thurlan also admitted to negligible contact and visitation with his child throughout the five-year period from June 1967 until May 1972.

Beset with all the citations for failure to comply with the orders of the trial court, Thurlan, on June 24, 1970, moved the court for an order granting Mrs. Dunn custody of the child; and an agreed order to this effect was entered on July 27, 1970.

Shortly after taking unto himself a new wife, and on May 26, 1972, Thurlan filed

the first of three motions requesting the court to grant him custody of his daughter. Each of these motions after extensive hearing and lengthy opinions by the trial court was overruled. In the final opinion granting the custody of the child to the grandmother the trial court said:

> "The child has been with her grandmother almost since birth and during that time has adjusted to the home environment excellently. She is healthy and happy."

Thurlan's financial circumstances were at a very low ebb; his take-home pay was $140.70 per week, and his fixed monthly expenses amounted to $703.50. This included the child support payments that he was required to make, which had been increased by the trial court to $20.00 per week.

The thread that runs throughout the record indicates that Thurlan was more interested in being relieved of the child support payments than in the welfare of his daughter. In an affidavit filed in support of his motion to grant him custody, he stated:

> "We are having a rough time to meet these bills and unless the court sees fit to award me the custody of my daughter we are going to be forced to take bankrupt law."

On another occasion, Thurlan testified that he couldn't stand the additional expense of traveling from his home to pick up his daughter. The distance was short and the time involved was approximately twenty minutes. This fact coupled with the fixed monthly expenses exceeding the take-home pay, plus the fact that Thurlan had requested the trial court to award custody of the child to Mrs. Dunn, were factors considered by the trial court in awarding custody to the grandmother.

Another significant factor that the court considered in concluding that the interests and welfare of the child would best be served by not disturbing the status quo was the arrearage in the child support payments over a seven-year period.

In the case of Horn v. Dreschel, 298 Ky. 427, 183 S.W.2d 22, 25 (1944) this court made the following observations:

> ". . . The duty of denying a mother the custody of her child is a very solemn one; and it will not be exercised unless it is clear that the rights of other parties . . . are paramount to the right of the mother, or denial of such right will inure to the benefit of the child. Where other custodians have nurtured the child from the time the child's memory 'runneth not to the contrary', and conditions are as satisfactory as is disclosed by this record, one who proposes to change the situation necessarily assumes the burden of proving almost beyond peradventure that the change will promote the welfare of the child; and, unless the change proposed is clearly exhibited to be to the child's best interests, the status should not be disturbed, provided the legal rights of the parties may be preserved."

See also, Paynter v. Smith, Ky., 481 S.W. 2d 270 (1972). George Eliot had Silas Marner say the same thing more succinctly: "When a man turns a blessing from his door, it falls to him who takes it in."

The trial court heard the evidence and saw the witnesses on three occasions. He discussed the matter in chambers with the child and counsel for the respective parties. He made extensive findings of fact which may be set aside only if clearly erroneous. We conclude that those findings are abundantly supported by the evidence.

The judgment is affirmed.

All concur.