Cynthia J. CHERRY, Movant,

v.

Timothy P. CHERRY, Respondent.

Supreme Court of Kentucky.

June 15, 1982.

William A. Hoskins, III, Nave, Williams & Palmore, Lexington, for movant.

C. Randall Raine, Lexington, for respondent.

STERNBERG, Justice.

Cynthia and Timothy were married on August 15, 1970. Their first child Todd was born September 13, 1972, and their second and final child Ryan was born on December 30, 1974. The parties separated on March 26, 1979, and on the same date Cynthia filed a dissolution of marriage action in the Fayette Circuit Court. On January 8, 1980, Timothy filed an affidavit in support of a written motion for temporary custody of

the two children. The trial court, in the absence of Cynthia and her counsel, granted Timothy's motion. On January 17, 1980, Cynthia sought to have the temporary custody order set aside and moved the trial court to grant her the temporary care, custody and control of the two children. On March 3, 1980, the trial judge granted Cynthia's motion and ordered that she have the temporary care, custody and control of Todd and Ryan. This action was tried to the court on August 18 and 20, 1980. Findings of fact and conclusions of law were filed by the trial judge on September 25, 1980. A decree in which custody of Todd and Ryan was awarded to Cynthia was entered on December 11, 1980.

The Court of Appeals reversed the trial court on the issue of custody. In doing so, it said: "The trial judge gave no reason for his findings hereinabove set forth." The Court of Appeals further said: "When we view this record as a whole . . . we can only come to the inescapable conclusion that the evidence clearly reflects that the best interests of the children are served by placing them in the custody of the appellant and it will be so ordered. The contrary result reached by the trial court is clearly erroneous. We have so concluded not only with the provisions of KRS 403.270 in mind but also the principle that we are not concerned with what might be best for a parent but rather what is best for the children." Custody of the children was thereupon awarded by the Court of Appeals to Timothy, their father.

One of the issues presented is did the Court of Appeals, acting as a finder of fact, improperly conclude that the trial court's decision was clearly erroneous.

A reading of the transcript of evidence discloses that on several occasions movant made gestures toward attempting to take her own life; that she expressed to respondent a fear that she may do harm to their younger child; that on numerous occasions movant would telephone for the respondent to come home from work to assist her with the children; that she was distraught over conflicts occurring in her marital relationship and the rapid deterioration of her marriage; that she individually, as well as she and her husband together, attended numerous counseling sessions with psychiatrists and psychologists; that movant is a good homemaker and regularly baby sat for her neighbors; that Todd and Ryan are usually well behaved children; that movant is a good mother; that Todd is a diabetic; that the parties were straining to meet their financial obligations; and that respondent contended that he had come home early from work so as to be with the children. However, the record reflects that he found time on many occasions to visit a girlfriend and stayed overnight on at least one occasion, and that during the time that respondent had temporary custody of the children, his mother and father took care of them. In characterizing his relationship with the children, the respondent was asked the following questions and made the following answers:

"Q. Do you have a preference regarding custody of the children in the action?

A. Yes. I am seeking custody.

Q. And will you state for the court if you will the grounds upon which you seek custody?

A. I am very close to the two boys. We have enjoyed a lot of things together. Unfortunately there has not been all the time I wanted to spend with them, but the time I have spent has been of quality. I think that I can be the model role that they need to grow up and to mature, and there is really no sacrifice I would not be willing to make for them."

In contrasting movant's ability to care for the children subsequent to the dissolution of the marriage of these parties, respondent said:

". . . I think that Cindy is capable of providing the kids with clean clothes, with the visits to the doctors, with her nutrition, etcetera and giving Todd a shot. I don't think she is capable of dealing with them and a situation entailing her necessity to work which will obviously have to be the case in this situation."

Psychiatric evaluation of movant's adequacy to care for the children is described by Dr. Meegan, a clinical psychologist, as follows:

"Q. Based upon your observations and your meetings with Mrs. Cherry and your meeting with Mrs. Cherry and Todd and your meeting with Mr. Cherry, Mrs. Cherry and Todd, is there anything that you observed that would indicate to you in your professional opinion that Mrs. Cherry could not be able to handle custodial situations involving her two children?

A. No. I was never—I never formally evaluated that question, so it is hard to have an opinion about, you know, which parent would be better, but in my opinion I never saw anything in the history or in the current situation that would indicate major deficiencies on Mrs. Cherry's part that would lead me to conclude her parenting was inadequate and needed questioning."

The trial court, in dealing with the custody issue, stated in its findings of fact that, "The wife has had considerable periods of depression during which she has attempted suicide. This depression and suicidal attempts have resulted from severe emotional distress caused by the marital breakdown of the parties. The court finds that at the present time the wife is mentally and physically able to care for and take care of the children as well as herself. She is the fit and proper person to have the care, custody and control of the children at this time." The trial court therefore found (1) that movant's attempt to take her own life resulted from severe emotional distress caused by the marital breakdown of the parties, and (2) that at the time the court filed its findings of fact movant was mentally and physically able to care for and take care of the children as well as herself. As a result thereof, that court found movant to be the proper party to have the care, custody and control of the children.

The trial judge did not make as in-depth findings of fact as could have been made so as to clearly comply with CR 52.01; however, CR 52.04 provides: "A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02."

The failure, if there was a failure, on the part of the trial judge to make adequate findings of fact was not brought to his attention as required by CR 52.02 or CR 52.04; consequently, it is waived. CR 52.01 provides that findings of fact may be set aside if clearly erroneous. However, we must bear in mind that in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion. *Eviston v. Eviston*, Ky., 507 S.W.2d 153 (1974). Other than this guideline and the provisions of KRS 403.-270, we are not prepared to define precisely the quantum of proof necessary to justify awarding the care, custody and control of a minor to one parent over the other.

Even though the trial judge may not have made in-depth findings of fact as contemplated by CR 52.01; nevertheless, when the record as a whole is considered, we do not find that the action of the trial judge was clearly erroneous, and we are of the opinion that the trial court properly awarded the care, custody and control of the two children to their mother.

Did the Court of Appeals properly reverse the custody award without remanding for a new determination based on any possible changes in circumstances which may have occurred since trial?

At some plateau in an original dissolution of marriage proceeding there must be a cutoff point where the taking of proof pertaining to the award of care, custody and control of minors must be drawn to a halt. This point is left in the good hands of the trial judge, and this court will not interfere with the action of the trial court unless there has been an abuse of discretion. *Cox v. Bramblet*, Ky., 492 S.W.2d 188 (1973).

The original award of care, custody and control of minors is subject to the control of the court and may be modified pursuant to KRS 403.340 upon a showing of a change of circumstances. *Cox v. Bramblet*, supra. We find no error in this respect.

██ As an issue in the Court of Appeals, Timothy argued that the trial court abused its discretion in dividing the marital property. The Court of Appeals, in response to this issue, wrote: "We find no error in the court's conclusions in this respect and no violation of *Colley v. Colley*, Ky., 460 S.W.2d 821 (1970)." This issue was not raised in this court; therefore, we do not reach it.

The decision of the Court of Appeals insofar as it awarded custody of the two minor children to their father is reversed, and the action of the trial judge in this respect is affirmed.

AKER, CLAYTON, O'HARA, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

All concur except CLAYTON, J., who dissents.