RENDERED: APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0027-MR

HAROLD BYRNE                                                          APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 22-CI-01716

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT AND ITS
CIVIL SERVICE COMMISSION;
RUTHANNE K. DOBBINS; ANITA M.
DAWSON; SUSAN M. GREENE; AND
BENJAMIN J. TAYLOR                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Harold Byrne has appealed from the order of the Fayette

Circuit Court affirming the decision of the Lexington-Fayette Urban County

Government's (LFUCG) Civil Service Commission (the Commission) to terminate

his employment due to misconduct. We affirm.

Byrne began working for LFUCG in March 2019 as a Deputy Director in the Division of Community Corrections at the Fayette County Detention Center. On February 9, 2022, LFUCG, through Lisa Farmer (Director of the Division of Community Corrections) and Kenneth Armstrong (Commissioner of the Department of Public Safety), charged Byrne with one count of misconduct for submitting an altered and falsified Family and Medical Leave Act (FMLA) form to Human Resources.[1] The charges were as follows:

> On January 27, 2022, Mr. Byrne submitted a U.S. Department of Labor Certification of Health Care Provider for Family Member's Serious Health Condition under the [FMLA] form to the Division of Human Resources. The LFUCG Family Medical Leave Coordinator had difficulty reading the response written in Section III, Part B, #10, the "Amount of leave needed." The form submitted by Mr. Byrne listed leave needed as "5-10" days. All parts of Section III are to be completed by the Health Care Provider. The coordinator contacted the health care provider, Intermountain Cancer Center, St. George, Utah to clarify the number of days of absence required to care for the family member. "Cindy" from St. George faxed a copy of the FMLA form retained in their file. Their form listed leave needed as "2-3" days off from work. A further review of the form submitted by Mr. Byrne revealed additional alteration when compared with the form provided by the health care provider. Section III, Part A, "Medical Information," #6, and Part B, "Amount of leave needed," #8, had been filed [sic] in with responses. However, the form provided by

---

[1] Byrne had previously been disciplined on February 1, 2022, and received a 24-hour suspension for violating Sections 8b: Malicious behavior or deliberate behavior which affects the efficient and effective performance of the job, and Section 8c: Misconduct, related to an email he sent to a "CCS-All Personnel" distribution list that discussed his concerns with the leadership team.

> the health care provider did not contain filled in responses. Mr. Byrne, with the intent to deceive, falsely completed, altered, and submitted a federally mandated medical certification, FMLA form. Based on this information, Mr. Byrne is in violation of Uniform Disciplinary Code 8c: Misconduct.

Based upon these charges, LFUCG requested that the Commission[2] dismiss Byrne from his position pursuant to KRS 67A.280 and Section 21-44 of LFUCG's Code of Ordinances.

The Commission held a hearing in May of that year, during which Byrne argued that LFUCG could not prove that he had made any changes to the FMLA form and that the form had been changed without his knowledge. LFUCG called several witnesses, including Director Farmer. She testified, in particular, that in April 2021, Byrne began to review "the sick leave and FMLA to make sure that compliance is being followed within the restrictions of the FMLA."

Byrne informed the Commission that his first witness was his brother, Shane Byrne, who would be testifying by affidavit as he was in Nevada caring for their mother. Counsel for Byrne read the affidavit into the record, in which Mr. Byrne stated that he had been the one who had altered the form to extend the leave time from two to three days to five to 10 days:

> I did not think it was a problem to amend the form before sending it to [Byrne]. The time of leave did not account

---

[2] *See* Kentucky Revised Statutes (KRS) 67A.230, which addresses the formation of the Commission.

for [Byrne's] travel to and from Nevada and Utah, so I made alterations to the form which I believed were appropriate. I also added details about Mom's condition in a portion of the form Dr. Rhodes inadvertently left blank. I did not tell [Byrne] I made these changes.

Counsel for LFUCG then asked the Commission not to consider or give any weight to Mr. Byrne's affidavit due to his absence as a witness, stating, "I know that the rules are relaxed, but I would ask the commission to take note that you don't have an opportunity to confront this person and cross-examine them." In response, the Commission Chair stated, "It has been duly noted that we have [an] affidavit that we did not expect, and that we cannot cross-examine, and the commissioners will take this in consideration during our deliberation. That's all we can do with it."

Byrne testified about the completion of the FMLA forms and that he had asked his brother to provide the form in question to the doctor's office to be completed. Once he got it back from his brother, Byrne glanced over the form to make sure it was signed and "looked appropriate[,]" but he did not analyze it line by line. When Byrne was charged with misconduct, he asked his brother about the form. Mr. Byrne told him that he had filled in areas that the physician had left blank and lengthened the amount of leave time that the physician had included on the form. Byrne said he asked his brother to attend the hearing:

I asked him, I said, "What – you need to attend this hearing because I mean, it's going to determine whether or not if I'm going to be dismissed or not." And he says, "I would like to." But with the care of my mother, with

her cancer treatment and whatnot, he wasn't able to. And the cost also, of flying down here for a, you know, five-, ten-minute testimony wasn't – wasn't – he wasn't able to do it.

Byrne asked his brother to prepare the affidavit because he was not able to attend the hearing.

The Commission entered its findings of fact and conclusions of law on May 18, 2022, sustaining the request for dismissal. It found that the FMLA form Byrne submitted had been altered when compared to the form provided by the healthcare provider and that Byrne, therefore, had committed misconduct by altering and falsifying the leave form. Byrne had not provided sufficient evidence or proof to override LFUCG's decision to dismiss him. LFUCG terminated Byrne's employment the same day.

Byrne sought review of the Commission's decision in a complaint filed with the Fayette Circuit Court, naming LFUCG and the commissioners as defendants (for ease of understanding, we shall refer to the defendants, collectively, as LFUCG). He alleged that the Commission violated KRS 67A.280 by erroneously shifting the burden to him to refute LFUCG's charge of misconduct. He also argued that the Commission's finding that he had altered and falsified the FMLA form was wholly refuted by the testimony. Byrne sought reinstatement, full back pay and benefits, and an order voiding the Commission's findings. LFUCG answered the complaint and pled several affirmative defenses.

The parties briefed their respective positions. LFUCG specifically argued that nothing in the Code of Ordinances allowed for evidence to be submitted from a witness who is not subject to cross-examination and that the Commission had not improperly placed the burden of proof on Byrne. Rather, Byrne had failed to offer sufficient evidence to rebut the proof LFUCG introduced at the hearing. The parties presented their arguments at a court hearing in December.

On December 22, 2022, the circuit court entered an order affirming the Commission's decision. The court concluded that the Commission had not acted arbitrarily or capriciously, noting that it was limited to determining whether the Commission's action was clearly unreasonable. "Based on the record, a reasonable person could conclude that Byrne intended to submit falsified documents based on the original document being submitted with alterations." This appeal now follows.

On appeal, Byrne argues that the circuit court committed clear error in upholding the Commission's decision because that decision was not supported by substantial evidence of record and was therefore arbitrary. LFUCG disagrees, arguing that the Commission's decision was not arbitrary.

As Byrne did in the present case, a public employee discharged by the Commission first seeks review at the circuit court level:

> [T]he standard of review to be applied to the cases in
> circuit court is a modified de novo, as explained in

-6-

> [*Brady v. Pettit*, 586 S.W.2d 29 (Ky. 1979)], which allows the reviewing court to invade the mental processes of the Board to determine whether its action is not arbitrary. To determine arbitrariness, the appellate court may review the record, the briefs, and any other evidence or testimony which would be relevant to that specific, limited issue. The appeal is not the proper forum to retry the merits. It is limited only to the question of whether the Board's action was clearly unreasonable.

*Crouch v. Jefferson Cnty., Kentucky Police Merit Bd.*, 773 S.W.2d 461, 464 (Ky. 1988). A public employee may then seek review in this Court.

> The standard guiding this Court on the appeal from the circuit court is the "clearly erroneous" rule as promulgated in [Kentucky Rules of Civil Procedure (CR)] 52.01. We cannot disturb the trial court's determination unless it acted clearly erroneously in the sense that its determinations were not supported by substantial evidence.

*Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986) (citing Kentucky Rules of Civil Procedure (CR) 52.01 and *Cherry v. Cherry*, 634 S.W.2d 423 (Ky. 1979)). "Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. and Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994).

Byrne argues that none of the five witnesses called by LFUCG testified or provided any documentary evidence that he had either changed the

FMLA form or knew that it had been altered when he submitted it. The existence of a discrepancy between the FMLA form he submitted and the original form the physician prepared, he continues, cannot support a basis for a reasonable person to believe that Byrne had caused this discrepancy. The Commission's conclusion that he had committed misconduct was "wholly based on guesswork, innuendo, and suspicion[,]" which did not constitute substantial evidence to terminate his employment.

As LFUCG points out in its brief, the Commission had to determine whether Byrne had submitted a fraudulent FMLA medical certification with the intent to deceive his employer. In upholding the Commission's decision to terminate, the circuit court agreed with LFUCG's position, which it summarized as follows:

> LFUCG states that they did meet the substantial evidence standard based on the falsified form alone. LFUCG argues that Byrne had a duty to turn in truthful information. The fact Byrne submitted a falsified document is enough to show intent; he intended to submit it. LFUCG asserts [there is] nothing in the Code that allows for the submission of evidence through a witness who is not subject to cross-examination. And . . . the only testimony that corroborates Byrne's assertion is the affidavit of his brother, who could not be cross-examined. Therefore, the affidavit didn't have to be given the same weight as in-person testimony.

> Further, LFUCG called several witnesses who testified to the discrepancies. However, the only evidence put forth by Byrne is his own testimony and the

> affidavit. LFUCG also states that after hearing the charges, Byrne never tried explaining the situation; he waited for the hearing, which points to his testimony not being credible. LFUCG also states part of Byrne's job was to deal with FMLA paperwork, and, further, the witnesses LFUCG put forth documented what led to the charges and showed how they decided to bring the charges. LFUCG also argues Byrne's "lack of effort to submit information he knew was accurate" is evidence Byrne intended to deceive LFUCG.

We agree and hold that substantial evidence supported the circuit court's decision to uphold the termination.

Next, Byrne argues that the Commission acted arbitrarily when it opted not to rely upon the affidavit of Mr. Byrne, which he stated was the only affirmative evidence about who had changed the FMLA form. However, LFUCG's Code of Ordinances § 21-44(d) only provides the Commission with "the power to summon and compel attendance of witnesses at all hearings by subpoena[.]" Nowhere in the code does it permit the submission of witness testimony by affidavit. While Byrne testified that he contacted his brother right after he received the charges and found out that he had altered the form, Byrne did not attempt to explain the situation to LFUCG. Rather, Byrne did not raise this information until the hearing several months later. And Byrne certainly could have ensured his brother's attendance at the hearing, either in person or even remotely, but he did not do so. The Commission was free to rely upon the information in the affidavit, or not. We agree with LFUCG that Byrne failed to produce any other

evidence to explain what happened in this case, apart from his own self-serving testimony. We hold that the Commission did not act arbitrarily in declining to rely upon the affidavit.

For the foregoing reasons, the order of the Fayette Circuit Court upholding the Commission's decision is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Scott A. Crosbie
Eric C. Eaton
Lexington, Kentucky

BRIEF FOR APPELLEES:

Barbara A. Kriz
Lexington, Kentucky