RENDERED:  FEBRUARY 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1001-ME

MATT E. MINIARD                                                                          APPELLANT

v.

APPEAL FROM FAYETTE FAMILY COURT
HONORABLE TIFFANY YAHR, JUDGE
ACTION NO. 23-D-00710-001

CHRISTOPHER VOLAN ROWE                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

ECKERLE, JUDGE:  Appellant, Matt E. Miniard ("Miniard"), seeks review of an

Interpersonal Protection Order ("IPO") entered on July 28, 2023, by the Fayette

Family Court in favor of Appellee, Christopher Volan Rowe ("Rowe").  After

careful review of the briefs, relevant law, and record on appeal, we affirm.

## BACKGROUND

Miniard and Rowe previously served together as officials on the

Board of the Fayette County Soil and Water Conservation District ("the FCCD

Board") from the time Miniard was elected in early 2019 until Rowe's resignation in November 2022. During his time on the FCCD Board, Miniard had a tumultuous working relationship with Rowe and some other members and employees.[1]

On May 24, 2023, Rowe filed a Petition for an Order of Protection, seeking protection against Miniard. In relevant part, the Petition alleged:

> Earlier this month, my wife, Gwenda Bond ["Bond"], was reading on our front porch and Matt Miniard – who she did not recognize at the time – drove by, stopped in front of our home and stared at her for an unnerving amount of time. She came inside and told me that a creepy man in a white truck had done this. On Thursday, May 11, 2023, at 3:30 p.m., my wife and I were on the front porch together and she was conducting a zoom meeting with two people who also witnessed this happen. Miniard returned, stopped in front of our house, and yelled my name. I wasn't sure who it was, so asked, and he replied, "Matt Miniard." He then proceeded to verbally abuse me, referring to me as a "piece of shit" and a "coward" and I informed him that he should leave, as did my wife, and that we were calling the police. He said "Call them" and I was already in the process of doing so. He then said, "I'm going to fucking kill you," and finally drove away.
>
> The fact that he clearly has visited our street, looking for me at home, more than once is unnerving and frightening. We of course made a police report and will be pursuing charges. We have since learned that Miniard

---

[1] *See Miniard v. Fayette County Conservation Dist.*, No. 2023-CA-1345-MR, 2024 WL 3836610 (Ky. App. Aug. 16, 2024); *Miniard v. Fayette County Soil Conservation Dist.*, No. 2023-CA-0933-MR, 2024 WL 3836596 (Ky. App. Aug. 16, 2024); *Miniard v. Silvanik*, No. 2022-CA-0881-MR, 2023 WL 6770788 (Ky. App. Oct. 13, 2023).

has an arraignment June 1 for second degree stalking of a tenant at one of his properties. The other reason we feel we must take this so seriously, is because of his criminal record, which includes jail time for assault[.]

I have had zero contact with Miniard other than the visit he made since I left the board. The fact that I am on his mind enough that he is targeting my house, along with these other recent incidents, make me extremely fearful that he might take violent action to harm or kill me or my wife.

(Record, ("R.") at 9-10.)

After reviewing the Petition, the Family Court entered a Temporary Interpersonal Protective Order ("TIPO") and set the matter for a hearing. Before the scheduled hearing, Miniard filed multiple motions concerning dismissal of the case, discovery requests, and amending the distance provision of the TIPO to allow him to drive in front of Rowe's residence and purchase property close to the residence. (R. at 42, 52, 63, 98, 136.) The Family Court denied Miniard's motions and eventually conducted a hearing on July 28, 2023.

At the hearing, Miniard appeared *pro se*, and Rowe appeared with counsel. Rowe and Bond testified first and essentially reiterated the contents of the initial Petition. Additionally, Rowe testified that during the other lawsuits Miniard had filed against him and the FCCD Board, Miniard had exhibited a desire to learn of Rowe's personal address and eventually obtained that information through unknown means. (Video Record ("V.R."), July 28, 2023 Hearing – 1:25:00.)

-3-

Rowe further testified that he believed Miniard was fixated with him due to their contentious relationship on the FCCD Board together and had safety concerns with Miniard owning property near him. (V.R., July 28, 2023 Hearing – 1:47:00.) Rowe also admitted that he emailed Miniard disparaging comments during their time on the FCCD Board together, often challenged what Miniard said during meetings, and expressed no fear of Miniard at that time; however, he alleged being afraid of Miniard after the May 2023 incidents. (V.R., July 28, 2023 Hearing – 2:00:00.)

Miniard testified afterwards and did not call any other witnesses. He denied staring at Bond on the occasion in early May and stating that he would kill Rowe on May 11, 2023; however, he admitted to driving on the road in front of Rowe's residence often, stopping in front of Rowe's residence on May 11, 2023, and asking for him that day. He claimed he did not own any firearms and believed that Rowe was unreasonably afraid of him because he was sitting in his car approximately 30 feet away. (V.R., July 28, 2023 Hearing – 3:10:00.) He also admitted seeking to purchase property near Rowe's residence, but because he believed investing in that area of town was a good business opportunity. (V.R., July 28, 2023 Hearing – 3:18:45.) At the conclusion of the hearing, the Family Court granted Rowe's petition and entered an IPO. This appeal followed.

-4-

## STANDARD OF REVIEW

A circuit court's findings of fact related to the entry of an order of protection will only be disturbed if clearly erroneous. *See* Kentucky Rule of Civil Procedure ("CR") 52.01; *see also Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

## ANALYSIS

To begin, we must address Miniard's briefing deficiencies and Rowe's request for sanctions pursuant to Kentucky Rule of Appellate Procedure ("RAP") 11(B). We acknowledge Miniard is a *pro se* litigant; however, he is no stranger to this Court. We have explained the importance of the rules to Miniard multiple times.[2] Despite this prior caution, Miniard's current brief contains unpreserved and otherwise irrelevant arguments. To the best we can glean from Miniard's statements, the only preserved argument he makes is a claim of insubstantial evidence to support the Family Court's findings. Because of the serious nature of cases involving protective orders and their effects, we will review

---

[2] We have also issued orders reminding Miniard of his obligation to follow our rules. *See Miniard*, 2024 WL 3836610; *Miniard*, 2024 WL 3836596.

this claim on the merits, but we will forgo review of the remainder. *See Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

"[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted). After conducting a hearing under Kentucky Revised Statute ("KRS") 456.040, if a court finds by a preponderance of the evidence that stalking has occurred and may again occur, the court may issue an IPO. KRS 456.060. A preponderance of the evidence in protective order proceedings occurs when the alleged victim was more likely than not to have been a victim. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). In determining whether stalking occurred, courts regularly refer to the criminal stalking statutes – KRS 508.130 and KRS 508.150. *See Halloway v. Simmons*, 532 S.W.3d 158, 161-62 (Ky. App. 2017). Under those statutes, stalking occurs when an individual has intentionally engaged in two or more acts that were directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim; served no legitimate purpose; and would have caused a reasonable person to suffer substantial mental distress. *Id.* Additionally, there must be an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death. *Id.*

In the case at hand, the Circuit Court found every element was satisfied and diligently recorded its findings. In relevant part, it stated:

> [The] Court finds by [a preponderance of the evidence] that an act of stalking has occurred. The Court finds [Rowe's] and Ms. Bond's recollection of the events to be credible in that [Miniard] has visited [Rowe's] home twice; the first time he harassed Ms. Bond and was looking for [Rowe] and the second time he threatened to kill [Rowe]. Prior to this, [Miniard] took legal action to find [Rowe's] home address and once he found it, the Court bel[ie]ves that he travel[led] Upper St. looking for [Rowe]. The Court believes [Miniard] stopped at [Rowe's] home on 5/11 in an effort to provoke a physical confrontation. There was no reason or legitimate purpose for [Miniard] to be at [Rowe's] home either time, especially considering [Rowe] had resigned from the Board 8 months earlier. The Court finds that [Rowe] was also reasonably fearful given [Miniard's] intentional provocation of [Rowe] in May. The Court also believes stalking is likely to occur again given [Miniard's] confrontation of [Rowe] months after [Rowe] concluded his business with the Board and that he continues to attempt to buy property within 500 feet of [Rowe's] home.

(R. at 146.)

The evidence provided by Rowe was substantial and supports the Family Court's findings. On the other hand, Miniard's testimony conflicted with itself and was primarily his opinion on the manners by which reasonable persons should conduct themselves. He testified that Rowe appeared very scared on May 11, 2023, to the point that Rowe almost pushed Bond off of their porch, and it was his opinion that a reasonable man would have instead "defended his home." (V.R.,

-7-

July 28, 2023, Hearing – 2:56:45.)  At one point, he claimed that he had no intention to confront Rowe, and that he was afraid for his own safety in light of what he thought Rowe might do to him.  However, Miniard also testified that he believed it was well within his rights to confront anyone who had personally attacked his character and stated that he did previously seek to discover Rowe's address.  (V.R., July 28, 2023 Hearing – 3:12:20.)

While the testimony of Miniard and Rowe directly contradicted, the Family Court is in the best position to assess the credibility of witnesses and weigh the evidence presented.  *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted).  In this case, the Family Court conducted a full evidentiary hearing, fairly affording each party a chance to present his case, and after doing so, chose to believe Rowe.  Because the Family Court did not abuse its discretion, we will not disturb its factual findings.  *See Cherry*, 634 S.W.2d at 425.

## CONCLUSION

Accordingly, we hold that the Circuit Court's findings were not clearly erroneous and affirm the June 28, 2023, Order of Interpersonal Protection.

ALL CONCUR.

BRIEFS FOR APPELLANT:   BRIEF FOR APPELLEE:

Matt E. Miniard, *pro se*   Jeremy Faulk
Lexington, Kentucky    Lexington, Kentucky