**Toni G. Jones KERR, Appellant,**

v.

**Michael S. OSBORNE, Appellee.**

No. 2009–CA–000351–ME.

Court of Appeals of Kentucky.

Feb. 26, 2010.

Stephen Nick Frazier, Paintsville, KY, for appellant.

J. Christopher Bowlin, Paintsville, KY, for appellee.

Before NICKELL and WINE, Judges; HARRIS,[1] Senior Judge.

## OPINION

NICKELL, Judge.

Toni Jones Kerr appeals from an order of the Johnson Circuit Court, Family Division, denying her motion to vacate an agreed order signed in May 2008 by Kerr and Michael S. Osborne. That order gave custody of their baby girl to Osborne and granted Kerr supervised weekend visitation with the child. Though unmarried, Osborne and Kerr are the undisputed parents of the child. The circuit court approved and signed the agreed order, which Osborne maintains is a final custody decree under KRS Chapter 403. Kerr claims should be set aside because she was duped into signing it while under the influence of alcohol and was mislead about its contents. She argues the agreed order is not a final custody order because, among other alleged flaws, it contains no findings of fact and makes no statement about the best interests of her daughter. The trial court denied a motion to vacate because it was filed outside the ten-day window permitted by CR[2] 59.05, and it was not filed

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Kentucky Rules of Civil Procedure.

within a reasonable time as required by CR 60.02. Having reviewed the record, the briefs and the applicable law, we vacate and remand for further proceedings consistent with this Opinion.

## PROCEDURAL BACKGROUND AND FACTS

A daughter was born to Kerr and Osborne [3] on February 6, 2008. On May 20, 2008, when the child was three months of age, at Osborne's instigation, Kerr and Osborne signed an agreed order giving custody of the child to Osborne, granting Kerr supervised visitation with the child for four hours every weekend and permitting Kerr to resume standard visitation with the child upon completion of a drug and alcohol education program. That same day, the agreed order was approved and signed by the circuit court judge, and the circuit court clerk mailed copies of the signed document to all attorneys of record and to Kerr. The next day, Osborne petitioned the court to award custody of his daughter to him. The custody petition stated that Osborne and Kerr were life-long residents of Kentucky and Osborne was currently living in Paintsville but that Kerr's address was unknown. There was no mention of the child's birthplace, residence or whereabouts. Both the agreed order and the petition for custody were drafted by Osborne's sister, an attorney in the law firm of Osborne & Bowlin, whose office is located directly below Osborne's apartment, where Osborne and Kerr were living.

On September 16, 2008, nearly four months after its entry, Kerr moved to vacate the agreed order. She admitted signing it in the downstairs law office but claimed she did so without reading the document, while under such undue influence and in such poor mental and physical condition that she could not "understand the nature and consequences of the document she was pressed to sign," and believing she was only agreeing to allow Osborne to care for the child and take her to the hospital should the need arise while Kerr was enrolled in a residential rehabilitation program. She also contended that the petition for custody was statutorily deficient and was never served on her as evidenced by the lack of a receipt for a summons; the agreed order was legally deficient under KRS 403.480 [4] and lacked the required findings of fact, conclusions of law and determination of the child's best interests; the agreed order was mailed to the parties three days before being entered into the court record; the agreed order lacked finality language; Kerr did not answer the custody petition; Kerr did not waive her appearance and no appearance was entered on her behalf; no evidence was taken; and finally, no affidavit was submitted upon which permanent custody could be granted.

Attached to the motion to vacate was a two-page affidavit signed by Kerr stating she and Osborne often drank alcohol to excess and she needed to enter residential rehabilitation to break her addiction to binge drinking. Kerr spent the night of May 19, 2008, with Osborne in his apartment. She consumed so much alcohol that night that she became unconscious and remained so until the next morning. When Osborne awakened her the next morning, he took her downstairs (while still clad in her pajamas and under the influence of alcohol) to his sister's law of-

---

**3.** Paternity test results filed with the court by Kerr on May 22, 2008, confirmed Osborne could not be excluded as the child's father. Osborne acknowledged paternity in the petition for custody he filed on May 21, 2008.

**4.** Repealed in 2004 and superceded by KRS 403.838.

fice in order to sign a paper which she believed allowed Osborne to care for the baby (and take her to the hospital if necessary) while Kerr was in rehab. Kerr did not question Osborne or his attorney-sister about the contents of the document, she just signed her name at Osborne's direction and went back to bed. Two to three days later, Osborne told her that their relationship was over. Osborne also told Kerr that her father had urged her to sign the agreed order. Kerr maintained there was never any mention of custody or court involvement prior to her signing the agreed order. Kerr alleged she had never seen Osborne care for their daughter and doubted that he possessed the skill to do so. Kerr completed rehabilitation but remains in outpatient treatment. Finally, Kerr stated she believed she was deceived into signing the agreed order. Kerr moved for immediate visitation with her daughter and for temporary custody.

Osborne responded to Kerr's motion to vacate by stating that he and Kerr had followed the agreed order for four months; but now that Kerr had completed rehab, she wanted to change the terms of their prior agreement. Osborne argued that the trial court lacked jurisdiction to vacate the agreed order because Kerr's motion was filed outside the ten-day window allowed by CR 59.05 and that the agreed order became final when the time for filing an appeal expired. Osborne maintained the only avenue by which Kerr could seek a change in custody was to file a motion for modification supported by two affidavits demonstrating their daughter was in "serious physical, mental, moral or emotional danger" as required by KRS 403.340(2).

Osborne alleged by affidavit that social services was contacted twice while Kerr was drunk and trying to care for their daughter; on May 19, 2008, Osborne allowed Kerr to stay in his apartment but told her it was in their child's best interest for him to be named her sole custodian and for Kerr to have only supervised weekend visitation until she completed drug and alcohol rehabilitation when standard visitation would resume; Kerr agreed with Osborne's plan; no alcohol was consumed by Kerr or Osborne on May 19, 2008; Osborne awakened Kerr on May 20, 2008, and brought her to his sister's law office where he watched Kerr read the agreed order and sign it; Kerr exercised visitation with her daughter only once between May and October 2008; and while Kerr called Osborne one other time about visitation, she did not exercise it. Osborne denied deceiving Kerr about the contents of the agreed order and stated he believed Kerr "understood exactly what she was agreeing to in the Agreed Order."

The motion to vacate was argued before the trial court on November 25, 2008. Both parties were represented by counsel. Kerr's attorney argued the agreed order was not a final custody order because of its many deficiencies, relief was appropriate under CR 60.02 on several grounds including fraud and undue influence, and at the very least, Kerr should be given the opportunity to present proof. Osborne's attorney argued Kerr's filing of the CR 60.02 motion was an attempt to avoid the requirements of KRS 403.340[5] which she could not satisfy.

On January 26, 2009, the circuit court entered multiple orders. One directed Kerr to pay monthly child support in the amount of $195.00 and to provide medical insurance for her daughter. Another de-

---

5. In the context of this case, a motion seeking a custody modification is not to be made "earlier than two (2) years after its date, unless the court permits it be made on the basis of affidavits" supporting a reasonable belief that "[t]he child's present environment may endanger seriously his physical, mental, moral, or emotional health."

nied Kerr's motion to vacate the May 2008 agreed order as being untimely because CR 59.05 requires such a motion to be filed within ten days of entry of the order to be vacated. The agreed order was entered on May 23, 2008, but Kerr's motion to vacate was not filed until four months later. The court further found that under the circumstances, four months was an unreasonable time in which to move to vacate the agreed order because Kerr would not have been hung over and without legal representation for one-third of a year, especially when one month of that time was spent in a residential alcohol addiction treatment program. The court also found Kerr was entitled to standard visitation [6] with her daughter under the terms of the agreed order since she had completed drug and alcohol education classes. Finally, the court stated Kerr could move to modify custody under KRS 403.340 by filing an appropriate motion with supporting affidavits because the court did not treat the motion to vacate as a motion to modify or change custody. This appeal followed.

## STANDARD OF REVIEW

■ We review a trial court's denial of a CR 60.02 motion for an abuse of discretion. *Bethlehem Minerals Co. v. Church and Mullins Corp.*, 887 S.W.2d 327, 329 (Ky.1994). To prevail, Kerr must have offered the trial court a "reason of an extraordinary nature justifying relief." CR 60.02(f). Similarly, we review a trial court's award of custody for an abuse of discretion. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky.2008); *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky.1982). To prevail, Kerr need not convince us the trial court should have reached a different re-

sult but that the result reached was unsupported by substantial evidence. *Sherfey v. Sherfey*, 74 S.W.3d 777, 782 (Ky.App.2002).

■ After reviewing the sparse record, including the hearing on the motion to vacate, we hold the trial court acted arbitrarily in finding four months to be an unreasonable time for Kerr to move to set aside the agreed order. Additionally, the court misread CR 60.02 as imposing a one-year "absolute cutoff" for the filing of a motion to vacate. CR 60.02 reads in pertinent part:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: ... (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time ... after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

On appeal, Kerr argues the trial court should have granted relief under CR 60.02(d), (e) and (f), none of which must be filed within a specified window of time but rather must be brought only "within a reasonable time." In *Cain v. Cain*, 777 S.W.2d 238 (Ky.App.1989), we held that a delay of twelve years was a reasonable

---

**6.** Kerr has since moved the trial court for extra weekend visitation with her daughter. In a supporting affidavit, she claims she is living in a recently remodeled mobile home with access to medical facilities for health emergencies and is taking her daughter to church every week. Osborne opposes the request for additional visitation alleging Kerr has resumed drinking.

time in which to allege fraud. Thus, contrary to the trial court's opinion, there is no "absolute cutoff" for filing a CR 60.02 motion alleging: (1) fraud; (2) that a judgment is void, satisfied, released or discharged; or (3) any extraordinary reason warranting relief. Furthermore, on the strength of *Cain*, there is precedent for concluding a delay of only four months was not unreasonable. Clearly, each case must be decided on its own facts.

Kerr, the mother of a young child, recognized her addiction to alcohol and her need for long-term residential rehabilitation. She thought she was providing for her daughter to receive care, if needed, during her rehabilitation, by signing an agreed order prepared by Osborne's sister, whom she considered to be a close friend. She subsequently learned that by signing the document she had relinquished custody of her child. The parties disagree about whether Kerr signed the agreed order while under the influence of alcohol. While it is debatable whether she acted under the disability of alcohol, there is no dispute that she acted without the advice of independent legal counsel and at the urging of individuals who had a personal stake in the outcome. Furthermore, Kerr did not enter rehab until a month after signing the agreed order and another of the four months was spent in a Virginia treatment facility for alcohol dependence. Those dates have not been disputed by anyone.

Custody of one's child is a highly emotional decision. We laud Kerr for trying to get her life together and shaking her dependence on alcohol. Under the circumstances of this case, we hold that four months was not an unreasonable time for Kerr to move to vacate the agreed order under CR 60.02, especially since there is no proof in the record that she sat on her hands and simply delayed filing the mo-

tion. However, we recognize that the taking of proof may shed a whole new light on the facts of this case.

■ Furthermore, an award of custody must be made following a determination of the best interests of the child. KRS 403.270(2). According to the record presented to us, the trial court has heard no evidence at all. At the time the court approved the agreed order, there is no indication from the record that it knew anything about the parents or the child. The extent of the court's knowledge was contained in the signed agreed order, which stated:

> Upon agreement of the Parties hereto; IT IS HEREBY ORDERED as follows:
> 1. That [Osborne] shall receive custody of the minor child, [D.J.A.][7];
> 2. That [Kerr] shall receive supervised visitation every weekend for four (4) hours. Said visitation must by supervised by [Kerr's] mother or father; AND
> 3. That [Kerr] shall receive standard visitation with the minor child once she completes a long-term drug and alcohol education class.

The agreed order gave the court some reason to believe Kerr was struggling with drugs or alcohol, but it established nothing about Osborne and his ability to parent. Because no custody petition had been filed at the time the court approved and signed the agreed order giving custody to Osborne, the court could not, and did not, determine it had jurisdiction to award custody.

■ Finally, a trial court's award of custody must be supported by substantial evidence. *Cherry*. Since the record contains no evidence, save conflicting affidavits filed by the parents, there is nothing to which we can point as being supportive of the

7. Pursuant to Court policy, minors are identi- fied by initials to protect their privacy.

trial court's order. Therefore, we must hold the trial court abused its discretion in awarding custody to Osborne without receiving substantial evidence in support of its decision.

For the foregoing reasons, the order of the Johnson Circuit Court, Family Division, is vacated and remanded with direction that the court conduct proceedings consistent with this Opinion.

WINE, Judge, concurs.

HARRIS, Senior Judge, concurs and files separate opinion.

HARRIS, Senior Judge, concurring.

I agree with every jot and tittle of Judge Nickell's well written opinion, and accordingly I concur in it. I write separately to give added emphasis to the requirement that trial judges determine child custody issues by utilizing the best interest standard and by rendering specific findings of fact predicated on matters of record. KRS 403.270; *McFarland v. McFarland,* 804 S.W.2d 17, 18 (Ky.App.1991).

Having labored for twenty years as a trial judge presiding over rural courts with child custody subject matter jurisdiction, I am keenly aware that exigent circumstances sometimes tempt trial judges to make a "do right" custody decision, thus overlooking or disregarding the substantive and procedural requirements which must be satisfied in order for a valid custody adjudication to be rendered. That temptation can be particularly strong in small communities where the judge may have extra-judicial knowledge of the parties, the child, and the circumstances involved.

The opinion in this case illustrates what can ensue when a trial judge strays from the path which the statutes and procedural rules mandate that he or she must follow. It should serve to remind domestic relations practitioners and trial judges of the need to resist temptations to do otherwise.