RENDERED:  JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0894-ME


ASTEN TAPP AND KORTNEY
TAYLOR-ANNE OSBORNE                                      APPELLANTS


APPEAL FROM DAVIESS CIRCUIT COURT
v.              HONORABLE JULIE HAWES GORDON, JUDGE
ACTION NO. 14-CI-00232


PAUL A. GARNER AND DEBRA A.
GARNER                                                  APPELLEES



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Asten Tapp appeals from the Daviess Family Court's

order denying his Kentucky Rules of Civil Procedure (CR) 60.02 motion to alter,

amend, or vacate a March 7, 2014 order in which Paul A. Garner and Debra A.

Garner (collectively the Garners) were granted temporary custody over B.C.O. (child) and all subsequent orders entered after that time.

Asten and Kortney Taylor-Anne Osborne were married prior to Kortney becoming pregnant with child, but they divorced prior to the birth of child in April 2012. Under their marital settlement agreement, which was incorporated into their dissolution decree, they agreed to joint custody, that Kortney would be child's primary residential custodian, and that Asten would have reasonable visitation and pay $60 in child support each month.

After child was born, Kortney and child lived with the Garners, who were Kortney's mother and stepfather. Asten and his mother, Kim Tong, regularly visited with child. A paternity action to establish child support was filed by the Daviess County Attorney, and Asten was found to be the father of child and ordered to pay child support. Asten and Kortney both struggled with substance abuse issues, and Asten was incarcerated in early 2013 on drug charges.

On March 7, 2014, the Garners filed a verified petition for designation as *de facto* custodians and to establish custody of child, an *ex parte* motion for an emergency hearing, relief, and a temporary order, and a supporting affidavit. In the petition, the Garners argued that for a period in excess of a year, they had been the primary caregivers and primary financial supporters of child, explaining child primarily resided with them since his birth and they met all of his financial needs

with neither of his parents paying child support.  The Garners argued Kortney voluntarily relinquished physical custody of child to them and could not provide a safe environment for child.  They alleged various grounds as to why Kortney was unfit to care for child.[1]  The Garners argued that Asten consented to child living with them, was currently incarcerated, and had not exercised visitation with child.  The Garners argued that Asten and Kortney waived their superior right to custody of child and asserted child remaining in the Garners' care would be in his best interest.  They requested that they be designated as child's *de facto* custodians, be awarded joint custody, and named as his primary residential custodians, with Asten and Kortney being restricted to only supervised visitation.  In the *ex parte* motion, the Garners sought to suspend Kortney's visitation and parenting time and restrain her from their home, workplaces, and taking child out of their custody.

Asten was named as a party in the petition and identified as being incarcerated at the Fulton County Detention Center, and this address was provided; Kortney's address was listed as unknown.  There was no certificate of service, summons, or other proof that either Asten or Kortney was served with the petition, *ex parte* motion, or supporting affidavit.  No warning attorney was requested or guardian *ad litem* appointed for Asten.

---

[1] The specific grounds of the allegations of Kortney's unfitness and the grounds for the *ex parte* request against her are not pertinent to this appeal.

A brief *ex parte* hearing was held on March 7, 2014, at which Debra testified consistent with her supporting affidavit. That same day, an order was entered granting the *ex parte* motion and giving the Garners temporary sole custody of child. This order did not name the Garners as *de facto* custodians. Asten and Kortney were not served with the order.

On March 10, 2014, Kortney entered a *pro se* appearance. On April 3, 2014, an agreed order was entered between the Garners and Kortney. It established the Garners as *de facto* custodians of child pursuant to Kentucky Revised Statutes (KRS) 403.270, awarded them temporary custody of child, and provided supervised visits for Kortney. Asten was not served with this order.

On or around September 1, 2015, Asten was released from custody and immediately resumed visits with child. An order entered in the paternity case on January 10, 2016, terminated Asten's child support obligation based upon the temporary custody order and Debra's statement that she did not want child support from Kortney or Asten.

About three years after Asten's release and resumption of visitation with child, on August 3, 2018, the Garners filed an *ex parte* motion for an emergency hearing, relief, and for a temporary restraining order to suspend Asten's visits with child and restrict him to supervised visitation as supervised by Kim at her home. In Debra's supporting affidavit, she noted that she and Paul continued

to meet all of child's needs and child was now in first grade. Debra expressed concern with Asten's ability to properly supervise and care for child, noting that Asten was unemployed, was recently arrested in Indiana on drug-related charges and Asten had expressed his interest in getting child and keeping him at his home in Indiana. Debra stated she was fearful that if Asten were able to take child to Indiana they would have trouble getting child back. She stated that Asten was trying to dictate when he would pick up child and how long he would keep him and due to Asten's increasingly threatening messages she was unable to allow child to go on unsupervised visits with Asten.

On August 3, 2018, a hearing was held on the Garners' *ex parte* motion. The Garners explained that Asten was not served because he was in an Indiana court at that time, addressing his Indiana criminal case. Asten had told Paul the Indiana criminal case would be dropped because he did not consent to a search during a traffic stop, but his vehicle was searched anyway. The Garners stated that they had been *de facto* custodians since 2014 with Asten being served by a jail deputy at that time.

The family court stated it would grant the motion, and it was making a finding that not granting the motion at that time would seriously endanger child. The proposed order was entered granting the Garners' request to limit Asten to

visitation supervised by Kim at her home, and Asten was provided a hearing date of October 1, 2018. Asten was mailed these documents.

On August 10, 2018, Asten filed a motion to alter, amend, or vacate through counsel. Asten requested that the *ex parte* order limiting his visitation be set aside along with all prior orders for failure to provide him with proper notice. He argued he was never served with the original petition even though the Garners knew he was incarcerated and had the address for the detention center on the petition, and since that time, the family court had entered various orders regarding child without his knowledge or input in violation of CR 4. Asten requested that the family court set aside the previous order naming the Garners as *de facto* custodians and awarding them custody, vacate all other orders affecting his right to custody of child, enter an award of attorney fees, and grant him sole custody of child.

On August 17, 2018, a hearing was held on Asten's motion. Although Asten continued to maintain he was not served with any pleadings previously, and the Garners maintained that he had knowledge, the parties announced the parameters of an agreement they had reached which would be submitted to the court. Asten and the Garners personally indicated their agreement with the terms counsel specified.

On September 4, 2018, an agreed order was entered between Asten and the Garners as prepared by Asten's counsel. Asten was granted visitation

every other weekend, which would convert to a 2-2-3 schedule upon the dismissal or not guilty verdict on the Indiana criminal charges with Asten getting every Wednesday and Thursday with child and alternating weekends. Asten was acknowledged as being a joint custodian with entitlement to child's school and medical records and to be listed as a parent on any forms pertaining to child.

On December 3, 2018, Asten, *pro se*, filed a notice for withdrawal of counsel and entry of his appearance *pro se*. He explained his counsel failed to file a motion for contempt against the Garners for repeatedly violating the agreed order as he had requested and instead kept sending letters to the other counsel and billing him for them. His counsel also filed a motion to withdraw which was later granted.

Over the next couple of months, Asten filed additional *pro se* motions, including a motion for contempt in which he alleged the Garners were not honoring the agreed order. Asten also filed court records showing that the Indiana criminal case against him was dismissed on November 28, 2018.

As pertinent to this appeal, on January 2, 2019, Asten, who remained *pro se*, filed a motion to renotice the August 10, 2018 CR 60.02 motion, arguing the motion was abated by and through his previous counsel. He challenged the family court's jurisdiction, arguing that Indiana had proper jurisdiction and he had a right to have service of the petition before a custody determination was made

under KRS 403.800-403.880. He asked for relief pursuant to CR 60.02(e) and (f), stating that his constitutional rights to due process and the fundamental right to parent were violated. Asten asked that the family court set aside the previous orders as void, grant him attorney fees, and transfer jurisdiction over the case to Indiana.

Asten filed an accompanying affidavit in which he disputed the representations the Garners made in the 2014 petition, *ex parte* motion, and Debra's affidavit. He contested the factual basis for the Garners qualifying as *de facto* custodians in 2014, alleging that Kortney was raising child with the Garners' help and that he was actively involved in visiting child and paying child support until he was incarcerated, with Kim paying child support on his behalf after his incarceration in 2013. He explained that although he learned the Garners had temporarily taken over caring for child in 2014, he did not know they had been established as child's *de facto* custodians. Asten explained that he wanted to provide for child, and after his release from jail he offered Paul child support for child but after repeated refusals started a college fund for child which at the time of filing contained $3,953.56. Asten stated that he provides for child when child is in his care and desires more parenting time. He argued the Garners have been very difficult to work with and have repeatedly violated the agreed order.

Later, Asten requested a continuation of the hearing on this motion in order to obtain counsel, and it was rescheduled.

On March 11, 2019, the hearing was held before the family court. The court heard arguments by both parties, and the Garners submitted a tendered order. At the conclusion of the hearing, the family court announced that it was satisfied that the agreed order was the resolution of the motion to alter, amend, or vacate and it would make its order to that effect final and appealable and deny the Garners attorney fees because Asten had a colorable argument. Asten stated that he planned to hire counsel.

On March 18, 2019, Asten, who was still *pro se*, filed a response and objections to the tendered order, objecting to the Garners' counsel proposing what the family court should order, continuing to argue that he was never properly served before the 2014 orders were entered, objecting that the Garners were never named as *de facto* custodians, and objecting to the entry of the *ex parte* order against him.

That same day, the family court denied Asten's motion by signing the tendered order. The family court explained that the action was properly commenced where no order or judgment was sought against Asten in the March 7, 2014 proceeding. As to Asten's argument that the family court did not have subject matter jurisdiction and personal jurisdiction over him, it concluded this

argument was waived by the combined actions of him entering his appearance, filing his motion, and then negotiating an agreement with the Garners which was filed in court without first obtaining an order to permit the sufficiency of service argument to be held in abeyance.

On March 26, 2019, Asten filed a *pro se* motion to alter, amend, or vacate the March 18, 2019 order. Asten argued that it was improper for the family court to adopt the tendered order rather than rendering its own judgment, requested specific findings, and continued to argue the underlying merits of his lack of service argument, including that his attorney assured him that the CR 60.02 motion was held in abeyance and could be refiled.

Following a hearing during which Asten's oral motion for a continuance was denied, on April 29, 2019, in an amended order, the family court found that Asten's objections did not relate to errors in the order but were continued arguments about the purported lack of service on him, and his argument that prior counsel made false statements about the issue of an abeyance did not relate to the court's decision. The family court denied Asten's motion, denied the Garners' motion for attorney fees, and declared the order to be final and appealable with no just cause for delay.

Asten retained counsel on appeal and argues that the family court erred in denying his CR 60.02 motion by concluding: (1) the action was properly

commenced without personal service on Asten; and (2) Asten waived his insufficiency of service claim by entering an appearance and entering an agreement with the Garners. Central to these arguments is Asten's allegation that the family court never made appropriate findings from which it could conclude that the Garners were child's *de facto* custodians.

We review the family court's denial of Asten's CR 60.02 motion for abuse of discretion. *Kerr v. Osborne*, 305 S.W.3d 455, 459 (Ky.App. 2010).

We affirm because while the issue of appropriate personal service on Asten was contested and was an appropriate ground for bringing a CR 60.02 motion initially, Asten waived his insufficiency of service of process claim by entering into a negotiated agreement with the Garners which resolved the dispute. Asten additionally submitted to the authority of the court in this matter by entering into the agreed order without reserving any rights to pursue his earlier CR 60.02 motion. As explained in *Brown v. Fulton, Hubbard & Hubbard*, 817 S.W.2d 899, 900 (Ky.App. 1991), when parties enter into an agreed order, this is a clear indication of their voluntary submission to the court's authority and acts as a waiver of any previous objection to service.

Finally, in the agreed order which the parties submitted, Asten agreed to shared custody. This was either an acknowledgment that the Garners were *de facto* custodians of child or functioned as a waiver of Asten's superior right to

-11-

custody as child's parent. While permanent custody was not determined through the agreed order, rights and responsibilities were established for each party in a manner designed to maximize the best interests of child.

As a practical matter, the Garners, Asten, and child all benefited from the agreed order. The Garners received recognition of the ongoing important role they were playing in child's life and certainty of the parameters of Asten's role in child's life. Asten had his parental rights and the importance of his role as father recognized, rather than potentially being relegated to having a more peripheral role in child's life based on his absence and pending criminal charges. The child gained the certainty of knowing where he would be and when, as well as an increased opportunity to develop his relationship with his father while also maintaining the security of life with the people who had functioned as his parents for years. This was a win-win scenario.

Although it might have been appropriate to pursue a resolution pursuant to the previous CR 60.02 motion had the parties been unable to finalize a written agreement, after their agreed order was signed and filed with the family court, Asten's previous arguments were waived with his submission of the agreed order and its entry by the court. While we understand that Asten is unhappy with perceived violations of the agreed order, this does not provide a justification for

undoing the agreed order and does not give Asten the right to pursue his original claims relating to lack of service.

This does not mean that Asten has no recourse. Asten may seek enforcement of his rights under the agreed order. Alternatively, he may seek to modify the agreed order, either as to temporary custody pursuant to KRS 403.280(6) or timesharing pursuant to KRS 403.320(3). *See generally Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008). Asten may also seek a permanent custody order rendered in his favor pursuant to KRS 403.270.

We caution that at this juncture the Garners have equal standing and are entitled to equal consideration for custody as Asten. KRS 403.270(1)(b)-(2). Pursuant to KRS 403.270(2), there is a "presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child." However, the best interest of the child could certainly support a timesharing arrangement that is not equal. A reduction in timesharing may still constitute reasonable timesharing under KRS 403.320. *French v. French*, 581 S.W.3d 45, 50 (Ky.App. 2019).

Accordingly, we affirm the Daviess Family Court's order denying Asten's CR 60.02 motion.

ALL CONCUR.

BRIEF FOR APPELLANT ASTEN TAPP:

Sara Elizabeth Collins
Louisville, Kentucky

BRIEF FOR APPELLEES:

Steven Russell Dowell
Owensboro, Kentucky