RENDERED:  DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0584-ME

JENNIFER LANCE                                                         APPELLANT


APPEAL FROM MADISON CIRCUIT COURT
v.        HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 20-CI-50092


MONTY HONAKER                                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE:   Jennifer Lance (Mother) appeals from an order of the Madison

Family Court granting the motion of appellee Monty Honaker (Father) for a

change in custody of the parties' minor child K.L. (child) and designating Father as

primary residential custodian.   Mother asserts that the family court erred in failing

to properly apply the dictates of KRS[1] 403.340 and abused its discretion in concluding that the change in custody was in the child's best interest. We affirm.

The parties to this dispute were never married. Mother has been sole custodian and primary residential custodian of the child, born in January 2012, since her birth. Although the parties initially lived together in South Carolina and shared child care responsibilities, Mother returned to Kentucky to further her education when the child was about two years old. Although Mother and child initially lived in Lexington where litigation concerning custody of the child commenced in 2017, they subsequently moved to Berea when Mother enrolled in college courses and the action was then transferred to Madison Family Court.

Father continues to reside South Carolina with his wife and her two children, whom he legally adopted, and two children they share in common. Father's wife Patricia, a nurse anesthetist, is the financial provider for the family and Father is a stay-at-home parent. After graduation from Berea College, Mother and the child moved from student housing and lived with friends while Mother worked different part-time jobs while trying to find suitable employment in her educational field. Mother stated at the hearing that she has now found a residence for herself and the child which she anticipated moving into in the near future.

---

[1] Kentucky Revised Statute.

As previously noted, Father initially filed a 2017 petition to establish joint custody and timesharing in Fayette Family Court. Father alleged in that petition that while paternity had been established and child support set in an action in Lexington County, South Carolina, custody of the child had never been judicially determined. The Fayette County, Kentucky petition alleged that both Father and Mother were fit persons to share custody and control of the child and that an award of joint custody was in the child's best interest. In response, Mother sought sole custody of the child, alleging that Father had abandoned her during her pregnancy, had moved in with her and the child when she was 10 months old, and that he resided with the child for no more than 16 months of her early life. Mother denied that joint custody was in the child's best interest, stating that the child had been diagnosed with autism, that child was doing well with treatment, and that the child regressed significantly after every unsupervised visit with Father. Thus, Mother alleged that any unsupervised or extended timesharing with Father was not in the child's best interest.

Mother and Father subsequently reached an agreement which the family court entered as an agreed judgment on January 3, 2018. The agreed judgment provided that:

1) Mother was to have sole custody of the child;

2) Father shall be entitled to access to the child's medical and educational records and Mother shall notify Father of the child's activities and events;

3) Father shall have increasing unsupervised timesharing with the child, including Skype or Facetime, all of which the order set out in particularity; and

4) Father would continue child support as set out in the orders of the Lexington County, South Carolina, family court.

On August 31, 2018, Mother filed a motion seeking an order temporarily terminating Father's timesharing, limiting correspondence with Father, and appointing the office of the friend of the court to conduct a custodial evaluation for the purpose of establishing timesharing. In response, Father objected to termination or restriction of his timesharing, agreed that the office of the friend of the court should conduct a custodial evaluation, and argued that his texts with Mother were solely for the purpose of setting up the court-ordered Skype calls with the child or to effectuate transfer of the child for timesharing. Thereafter, in October 2018, the Fayette Family Court ordered that communication between the parties be limited to one email per day, giving the other party twenty-four hours to respond. The court also ordered that text messages would be limited to emergencies and coordination of timesharing exchanges only. The family court

also re-appointed[2] Davina Warner to perform a timesharing evaluation.  Ms.

Warner ultimately filed her timesharing evaluation in January 2019 which included

the following impression:

> I have concerns about [Mother] as [the child's] sole custodian.  [The child] has had at least 7 unexcused tardies while in [Mother's] care.  [Mother] failed to get [the child] to a scheduled therapy appointment without contacting the therapist.  [Mother] seems to expect [the child] to schedule electronic timesharing with [Father], which is an inappropriate expectation for a child especially one as young as [this child].  [The child's] statements during her interview indicated that [Mother] has shared inappropriate information with [her], making the child aware of her parents' court involvement; telling [the child] her dad starts fights with her mom; and talking negatively about [Father] to [the child].  [Mother] also reported a recent health diagnosis of dermatomyositis, which by [Mother's] admission affected her ability to get [the child] to school during a flare.  Since this case was referred to me for a timesharing evaluation, I am unable to make a recommendation regarding custody, but I suggest that [Mother] and [Father] reconsider if their current custody agreement is in [the child's] best interest.

Ms. Warner also offered the following recommendations:  1) that Father be

allowed timesharing at least once a month and during the child's fall and spring

breaks; 2) that Father and Mother have equal timesharing during the child's

summer break; 3) that Mother and Father successfully complete a cooperative

---

[2] Apparently, the case was previously referred to Ms. Warner for evaluation in November 2017, but an order appointing her was never entered due to the parties' January 2018 agreement concerning custody and timesharing.

parenting program to improve their communication with each other and with the child; 4) that Mother ensure that the child is at school on time unless she has a documented excuse per school policy; 5) that Mother complete parenting education as recommended by the child's mental health therapist, Jennifer DiBlasio; and 6) that Mother ensure that the child continues to participate in therapy as recommended by the qualified mental health professional of the family's choice, currently Jennifer DiBlasio, directing that both Mother and Father support the child's treatment and participate in counseling as recommended by Ms. DiBlasio.

Prior to entry of an order on the parties' motions regarding the report, Mother moved to transfer the case to Madison Family Court due to Mother's relocation to Berea in 2017 so that she could attend Berea College. The first motion filed in Madison Family Court was an April 16, 2020, motion to terminate parenting coordination; to require Father to remove the child from his wife's medical insurance; and to require Father to reimburse Mother for medical expenses related to the child. On May 22, 2020, Father filed the motion to modify custody and parenting time which precipitated this appeal. In that motion, Father alleged that since the entry of the January 3, 2018, agreed order concerning custody and timesharing, Mother has failed to provide him access to the child's medical and educational records and specifically requested that he be permitted to freely communicate with the child's therapist concerning a treatment plan for her

diagnosis of "adjustment disorder with mixed anxiety and depressed mood" and "child affected by parental relationship distress." Father argued that circumstances had changed since the entry of the January 3, 2018, agreed order as to custody and timesharing such that it is in the child's best interest that he be awarded sole custody and designated primary residential custodian. Father supported his motion for a modification of custody with the previously noted report of Ms. Warner filed in the Fayette County proceedings, as well as his own affidavit. Father also attached an April 23, 2020, letter from Christy Leaver, whom the Fayette Family Court had appointed in September 2019, to provide parenting coordinating for the parties. Ms. Leaver's letter to counsel for both parties addressed the allegations set out in Mother's motion to terminate parental coordination services. After pointing out several factual inaccuracies in the allegations, Ms. Leaver offered the following assessment:

> Finally, I would like to suggest that the real motivation for the motion to discontinue PC [Parental Coordination] is rooted in [Mother's] personal dislike of the structured process that is designed to prevent manipulative control. [Mother] has been successful in sabotaging PC simply by her refusal to comply with it. The situation has been further confounded by the need for new counsel due to the demise of existing counsel for [Father] as well as the willingness of counsel for [Mother] to contort collaborative decisions made in case conference with me and prior counsel (please see attached email correspondence).

> I attest that, should the court make a determination that it be appropriate, I am willing to continue providing PC services to these parties on behalf of their minor child in the event that the court is willing to compel cooperation by the parties and mandate adherence to PC protocol.

After Mother filed a response objecting to Father's motion to modify custody, the Madison Family Court entered a July 2020 order appointing Kimberly Olds as friend of the court to make recommendations consistent with the best interests of the child. At the conclusion of an August 2020 case management conference, the family court entered an order scheduling another conference for October 19, 2020. Because the child would be attending school virtually in the Fall of 2020, the family court directed that Father have additional parenting with the child from August 11, 2020, to September 20, 2020, and again from November 29, 2020, to December 26 or 27, 2020.

On April 27, 2021, the Madison Family Court conducted a hearing on Father's motion to modify custody and Mother's motion to discontinue parenting coordination, hearing testimony from Father, Davina Warner, the Fayette County friend of the court, as well as hearing Mother's testimony and that of several witnesses in her behalf. The family court also received the oral report of Kimberly Olds, the Madison County friend of the court. At the conclusion of the hearing, the Madison Family Court entered oral findings on the record and directed counsel for the parties to submit proposed written findings. Entry of the May 13, 2021, written

order awarding sole custody of the child to Father and designating him as her primary residential custodian resulted in this appeal. Additional facts will be developed as they relate to Mother's arguments for reversal.

Initially, we reiterate that a family court has broad discretion when determining matters pertaining to the custody and care of children. *Futrell v. Futrell*, 346 S.W.2d 39 (Ky. 1961). We will not disturb a family court's custody award absent a showing that the decision constitutes an abuse of discretion. *Allen v. Devine*, 178 S.W.3d 517, 524 (Ky. App. 2005). Abuse of discretion occurs only when the family court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004). Applying these principles to the decision of the family court in issue here, we cannot conclude its decision to modify custody constitutes an abuse of discretion.

Mother first argues that the family court misapplied the dictates of KRS 403.340 in failing to consider whether the child's current environment seriously endangers her physical, mental, moral, or emotional health prior to modifying the current custody arrangement. We are not persuaded by Mother's argument for two reasons.

First, the specific mandate of KRS 403.340, in parts pertinent to this appeal, does not support Mother's contention:

(1) As used in this section, "custody" means sole or joint custody, whether ordered by a court or agreed to by the parties.

. . . .

(3) If a court of this state has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, the court shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

   (a) Whether the custodian agrees to the modification;

   (b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

   (c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

   (d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

   (e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him[.]

. . . .

(4) In determining whether a child's present environment may endanger seriously his physical, mental, moral, or emotional health, the court shall consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with his parent or parents, his de facto custodian, his siblings, and any other person who may significantly affect the child's best interests;

(b) The mental and physical health of all individuals involved;

(c) Repeated or substantial failure, without good cause as specified in KRS 403.240, of either parent to observe visitation, child support, or other provisions of the decree which affect the child, except that modification of custody orders shall not be made solely on the basis of failure to comply with visitation or child support provisions, or on the basis of which parent is more likely to allow visitation or pay child support;

(d) If domestic violence and abuse, as defined in KRS 403.720, is found by the court to exist, the extent to which the domestic violence and abuse has affected the child and the child's relationship to both parents.

(5) Subject to KRS 403.315, if the court orders a modification of a child custody decree, there shall be a presumption, rebuttable by a preponderance of evidence, that it is in the best interest of the child for the parents to have joint custody and share equally in parenting time. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare.

Review of the statutory language confirms that subsection (3)(d), relating to

dangers inherent in the child's present environment, is but one of several factors

the family court must consider in determining whether a modification of custody is in the child's best interests.

Second, Mother's argument about the proper application of the serious endangerment portion of the statute has previously been considered by this Court and rejected:

> It is true that KRS 403.340 was significantly altered by the General Assembly in 2001. The previous standard (utilized in *Fenwick* [*v. Fenwick*, 114 S.W.3d 767 (Ky. 2003)], *supra*, and relied upon by Tara) permitted a change in custody only upon a dual demonstration: (1) that substantial harm would result to the child's physical, mental, or emotional health without a change of the custodial arrangement and (2) that any harm caused by the change would be outweighed by its advantages. **The statute now permits modification if "a change has occurred in the circumstances of the child or his custodian" and if "the modification is necessary to serve the best interests of the child."** KRS 403.340(3).
>
> The strict standards for modification in the pre-2001 version of the statute were "intended to inhibit further litigation." *Quisenberry v. Quisenberry*, [785 S.W.2d 485 (Ky. 1990)]. In enacting its amendments, the General Assembly not only relaxed the standards for modification of custody, but it also expanded upon the factors to be considered when modification is requested. The statute now directs the trial court to consider and to permit a change of custody based on the factors enumerated in KRS 403.270(2), the statute used in making initial custody decisions. KRS 403.340(3)(c). **The former standards for modification, which Tara argued before the family court, are now mere elements or factors to be considered by the court. KRS 403.340(3)(d) and (e).**

-12-

*Fowler v. Sowers*, 151 S.W.3d 357, 359 (Ky. App. 2004) (emphases added).  Thus, the family court did not err in failing to find serious endangerment in the child's current environment prior to modifying custody.  In addition, there is absolutely no evidence that the family court failed to consider this aspect of the statute in reaching its decision regarding the child's best interests.

Next, Mother insists that the family court erred by impermissibly imposing upon her the burden of proof which should have been assigned to Father. While Mother argues that the family court allowed Father to simply advance allegations which Mother was required to rebut, review of the evidence dispels that contention.  The record discloses that Father offered ample evidence to support his allegations including:  evidence concerning the child's lack of hygiene which resulted in noticeable body odor; Mother's failure to abide by her agreement to permit Father access to the child's medical and school records; Mother's refusal to cooperate and participate in parental coordination ordered by the Fayette Family Court; and refusal to communicate in good faith regarding information pertinent to his timesharing with the child.  The record contains substantial evidence consisting of testimony and documentary evidence from many witnesses supporting the factual findings of the family court and Father's allegations.  Absolutely nothing in this record indicates that the burden of proof was impermissibly shifted to Mother.

Finally, Mother argues that the family court's findings regarding change in circumstances are clearly erroneous. In light of Mother's contentions that the family court's findings concerning change in circumstances are inadequate to support its decision, we set those findings out in detail:

> 3. The Court, having considered the testimony of the witnesses, the exhibits admitted into evidence, including but not limited to the reports of the Friends of the Court, finds that both of the parties have evolved to some degree from their childish ways and immaturities. The Court finds that [Mother] has gotten a handle to some degree on [Father's] raised concern of her drinking. The Court finds that [Father] has addressed any mental health issues and corrected those with medication, that the woman that filed charges against him actually married him, and his criminal history in regards to the cocaine issue seems to be a one and done many years ago. The Court finds that . . . the very reason that KRS 403.340 exists is so that the Court can look at modifications of custody decrees and determine if there has been a change in circumstances that would now make a different plan in the child's best interests. The Court finds that a change in circumstances has occurred and that it is in [the child's] best interest to modify custody and timesharing. It is best for the parties' child that [Father] have sole custody of her and that she resides primarily with [Father].

> 4. It has been more than two years since the entry of the last custody order. [Father] has filed two Motions to modify custody since the entry of the last custody order that were before the Court and heard on April 27, 2021. Pursuant to KRS 403.340(2) circumstances have changed [. . .] and a modification of custody is necessary to serve the best interest of [the child]. The circumstances of [Mother] have improved.

5. The dynamic that got the parties to their current situation was not ideal, but other individuals have overcome far worse circumstances and successfully parented children. There have been numerous contradictions throughout this case, which will be noted herein. The Court believes that [Mother's] animosity toward [Father] stems from [her] belief, right or wrong, that she was left to support [the child] alone. This is why [Mother] continued to reference this issue on social media. [Mother] believes that she had to support [the child] and do it all on her own and this seems to have created hard feelings against [Father].

6. The most stable of the parties at this time is [Father]. [Father] has lived in the same home in South Carolina with his wife, Patricia Honaker, for several years. [Father] and his wife reside in South Carolina with their four children. [Father] legally adopted two of Patricia's children. Documentation of same was introduced into evidence. [Father] is a stay-at-home dad. One of Father's and Patricia's other children has a chronic illness and child care was not working out for the child, however, said child is able to attend school. Patricia has stable employment and ample income to support the family.

7. [Mother] graduated from Berea College in December 2020. Since graduating, [Mother] was required to vacate student housing at Berea College and temporarily resided in two homes but testified that she has secured permanent housing and will move into that home soon. [Mother] works multiple jobs and is hopeful to find stable steady employment soon in her educational field.

8. The parties' case has to be a sole custody case. The parties' communication styles are in constant conflict and they cannot meet in the middle.

9. At one time, [the child] may have been diagnosed as being somewhere on the autism spectrum. However, this

-15-

has not been a significant issue for the child for several years. The Court is concerned that [Mother] attempted to use autism in a way that was misleading and presented same in a way that did not show absolute candor to the Court. However, the Court finds that there are enough issues with [the child] that some manner of handling [her] should be handled in accordance with a child on the spectrum. The Court finds that all children need structure and the Court is of the opinion that [this child] really needs structure. [The child] is already dealing with anxiety from all the changes in her life. These parties should have worked together for a plan that was utilized in both houses so that it would flow from one house to the next. [Father] has owned his own home for a period of time whereas [Mother] does not have a permanent home of her own. [Father] is able to provide [the child] more structure than [Mother] at this time.

10. The messages admitted into evidence show that [Mother] wants to maintain absolute control without any input from [Father] and will not even answer [Father's] direct questions. [Mother's] behavior is not the behavior of someone who actually has everything under control and is willing to provide information.

11. [Father] does ask a lot of questions but much of this is due to the fact that he never gets a straight answer from [Mother]. [Mother] says that she wants to be a custodian and make decisions, but she is not willing to give direction to [Father]. [Mother] now says that she wants to have joint custody with [Father]. However, [Mother] doesn't even want to be in the same Zoom call with [Father] and [the child's] neurologist.

12. [Father] can provide a more stable environment and [the child] is adapted to her home and her half-siblings there. At this time, [Mother] testified that she has rented an apartment[,] but does not have a home of her own and [the child] has recently changed schools from Madison County to Fayette County anyway.

While these findings may not be models of clarity in articulating the family court's determinations from the evidence before it, we view them as more than sufficient for purposes of our review. The evidence before the family court depicts a pattern of conduct showing Mother's blatant disregard of the provisions of the January 2018 agreed custody order, given her refusal to communicate to Father even the most basic information necessary for a smooth transition during periods of timesharing or medical and educational information essential to the child's well-being during the time she is in Father's care. This behavior, occurring after Mother's agreement to keep Father informed of all necessary information, is certainly evidence of changed circumstances since the entry of the agreed custody order.

Although the family court must consider all the KRS 403.340 factors prior to modifying custody, it need not make specific findings pertaining to each factor, only to those it determines are relevant to its determination of the child's best interests. Because any alleged failure on the part of the family court to make adequate findings of fact on the issue of changed circumstances was not brought to its attention as required by CR[3] 52.02, the issue must be considered waived and

---

[3] Kentucky Rule of Civil Procedure.

unavailable for our review. The Supreme Court of Kentucky emphasized this very

point in *Cherry v. Cherry*:

> The failure, if there was a failure, on the part of the
> trial judge to make adequate findings of fact was not
> brought to his attention as required by CR 52.02 or CR
> 52.04; consequently, it is waived. CR 52.01 provides
> that findings of fact may be set aside if clearly erroneous.
> However, we must bear in mind that in reviewing the
> decision of a trial court the test is not whether we would
> have decided it differently, but whether the findings of
> the trial judge were clearly erroneous or that he abused
> his discretion. *Eviston v. Eviston*, Ky., 507 S.W.2d 153
> (1974). Other than this guideline and the provisions of
> KRS 403.270, we are not prepared to define precisely the
> quantum of proof necessary to justify awarding the care,
> custody and control of a minor to one parent over the
> other.

634 S.W.2d 423, 425 (Ky. 1982). The *Cherry* Court also made clear that, even in

cases in which the family court failed to make in-depth findings of fact as

contemplated by CR 52.01, if the record as a whole supports its determination, a

reviewing court may not set aside the family court's decision. *Id.* Reviewing the

record in this case as a whole, we are firmly convinced that there is ample evidence

of changed circumstances since the prior decree, as well as evidence of the child's

best interests, to support the family court's modification of custody.

In sum, this record is replete with evidence supporting the findings

and conclusions of the family court that it is in the child's best interest to be in the

custody and control of her Father. Because the order of the family court is

-18-

supported by evidence of substance, it cannot be construed to be arbitrary, unreasonable, unfair, or unsupported by sound legal principles. As such, the family court's exercise of its broad discretion in the area of custody and care of the child in this case may not be set aside.

Accordingly, the order of the Madison Family Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Stephanie Tew Campbell
Lexington, Kentucky

BRIEF FOR APPELLEE:

Nanci M. House
Winchester, Kentucky