RENDERED: JULY 12, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1100-MR

SHARRONN ADAIR                                                    APPELLANT

v.          APPEAL FROM JEFFERSON FAMILY COURT
            HONORABLE BRYAN D. GATEWOOD, JUDGE
            ACTION NO. 18-CI-501135

REBA EMBERTON; TERRY LEE
ADAIR, JR.; AND TERRY LEE
ADAIR, SR.                                                        APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND KAREM, JUDGES.

CETRULO, JUDGE: This case arises from an ongoing custody action between a grandmother and mother to a minor child. On appeal is the order of the Jefferson Family Court entered on June 28, 2023, following a hearing on that same date.

## FACTUAL BACKGROUND

This appeal was filed by the grandmother and current custodian, Sharronn Adair ("Sharronn"). Sharronn and her husband are the paternal

grandparents of J.C.A. ("the child"). Temporary custody was initially placed with them through a dependency, neglect, and abuse ("DNA") action after his birth in 2016. The child was born premature and with medical issues, and the child's mother, Reba Emberton, ("Reba") admitted to heroin use throughout pregnancy. The Adairs were granted permanent custody of the child through the DNA action in 2018.[1] However, that same year, they filed this separate petition for custody in the Jefferson Family Court. As alleged therein, both parents of the child have had longstanding drug abuse problems and multiple criminal convictions. For nearly two years, there was no activity in this action, and the record indicates that Reba had little or no contact with the child during that time. Terry Lee Adair, Jr., the child's father, is the son of Sharronn and has been a party to this proceeding throughout, but does not appear to have actively participated.

However, in 2020, Reba filed a motion for reasonable visitation pursuant to Kentucky Revised Statute ("KRS") 403.320, alleging that she had been drug free and regularly testing, and employed for more than one year. The family court granted her supervised and limited visitation. In 2021, the court briefly expanded Reba's visitation to include unsupervised visits arranged through a drop off/exchange at a neutral location, Family Matters Exchanges and Visitation Center

---

[1] There has been no action taken in that DNA case since 2018.

("Family Matters").[2]  However, in May 2021, the family court vacated that prior order of unsupervised visitation to Reba.  In that ruling, the court stated that upon review, it was necessary to alter, amend, or vacate its prior ruling "to avoid placing the child at risk."

The May 2021 order further held as follows:

> In order to assist in gathering all information necessary to protect the parties and the child herein, the Court shall appoint Hon. James Murphy to serve as a Friend of Court [("FOC")] in this matter.  Mr. Murphy shall investigate the allegations contained in Ms. Kilgore's affidavit as well as other relevant information surrounding these parties and the child at issue.  Mr. Murphy will be expected to propose parameters regarding parenting time for the Respondents.  Going forward, the Court will look to the reports and recommendations of the FOC with respect to same.  Pending a report and recommendations by the FOC, visits between Respondent [Reba] and the child shall remain supervised.

It is not entirely clear from the limited record what transpired over the next two years after Mr. Murphy's appointment as FOC.  There is no written report from him within the entire record on appeal, nor are there transcripts or videos of other hearings conducted during that time period.  However, it is clear from the

---

[2] This agency provides safe exchanges, third-party supervised visitation, and educational sessions for families, custodians, and parents.  Carlotta Kilgore ("Ms. Kilgore") is an employee who was involved in the supervised visitation and exchanges for the child.  She had previously provided an affidavit in support of Sharronn which had recommended against unsupervised visitation with Reba.

-3-

orders of record that the Court did frequently rely upon and involve the FOC in several hearings conducted after that appointment in 2021.[3] An order in October 2022 referenced a hearing when the child's psychologist and social worker both testified and expressed concerns with expanding Reba's parenting time. The FOC recommended increasing Reba's parenting time, but the family court still did not approve overnight visitation.

In January 2023, the matter came before the family court on review. The court "heard from the FOC and counsel for both parties" but again denied Reba's request for more parenting time. In March, Reba filed a motion requesting make-up parenting time for visits missed. That same month, Sharronn moved to transfer venue to Bullitt County, where she and the child have resided since 2017. This was accompanied by her counsel's motion to withdraw due to financial constraints. An order allowing counsel to withdraw was dated March 27, 2023. There is no indication in the record of any hearing on the motion to change venue, nor any indication that the family court ruled on that issue. The record next reflects a "review" hearing conducted in May 2023 when Sharronn appeared *pro se* for the first time. Upon request of the court for his thoughts, the FOC recommended expanding Reba's visits to include one overnight, every other week, noting her compliance with drug screening. While we do not have the video from

---

[3] The only hearing that was made part of the record on appeal is the hearing of June 28, 2023.

that hearing, the order indicates that no witnesses testified, and there is no indication that the FOC had met with the child or talked to any of his therapists or counselors at that point. The order concluded that, "upon the filing of a new motion for any modification of this schedule, the FOC shall meet with the minor child and prepare a report for the Court."

However, shortly after Sharronn's counsel withdrew, Reba filed a motion for contempt, alleging that Sharronn violated the court-ordered visitation schedule by not requiring the child to go with her when scheduled. That motion sought incarceration and attorney's fees from Sharronn; was served on her *pro se*; and the family court entered an order on that motion, setting a 30-minute contempt hearing on June 28, 2023, at 2:30 p.m. Finally, on June 27, 2023, less than 24 hours before the scheduled contempt hearing, Reba's counsel filed another motion for expanded parenting time. This was allegedly served upon Sharronn, *pro se*, by email, although there is nothing in the record to show that she had notice of the motion.

On June 28, 2023, the matter was called for hearing. The order which resulted from that hearing states that the matter came on for hearing that day for "review, contempt, and on a motion for expanded parenting time" filed by Reba. In fact, the matter had only been noticed for a hearing on the contempt motion. At the hearing, the family court immediately began discussing the most recent filing

for additional parenting time with Reba's counsel and with the FOC, both of whom were present in the courtroom. There is no mention of Sharronn who was not in the courtroom. The court asked Reba a few questions and asked the FOC how visitation was going. No one was sworn to testify.

The following discussion ensued:

Court: I'm going to make a note here that the FOC reports that the parenting time is going well and supports expanding it . . . you said you spoke to somebody else?

FOC: I spoke to Carlotta Kilgore at Family Matters. She is monitoring the exchange right now. She's not doing supervised visits anymore.

Court: What kind of expansion do you recommend, Mr. Murphy?

FOC: Well, right now, she gets one weekend night?

Atty: She gets Saturday . . . .

Reba: Every other week.

Atty: Every other week until Sunday.

. . . .

FOC: I'd be OK with the Friday to Sunday.

Reba: Can I get him until 2:00 on Sunday so I can take him to church?

Atty: Oh, I was going to have you have him . . . I think Mrs. Kilgore is there until . . . I'll check with her, but I think she's there until 6, so I would have . . . .

-6-

Several more minutes passed with discussion regarding the location for the exchange for this expanded visitation. After nearly eight minutes, Reba mentioned that Sharronn was in the waiting room on the Zoom link. The court then admitted her into the hearing, stating, "We didn't see you there for a second. Sorry about that."

Upon being admitted to the hearing, Sharronn immediately asked for a continuance, believing that she was there for a contempt hearing and needed to have counsel. The court denied the request, advising her that this was "only on for review," and "we're just making minor changes; we're not making any big changes today." Then, the court suggested to Reba's counsel that the contempt motion should be remanded, to which counsel agreed. However, the court then informed Sharronn that the guardian *ad litem* ("GAL") – although clearly referring to the FOC – had already recommended expanding Reba's parenting time, and that the court had granted that request.[4]

Sharronn questioned how that could have occurred if the FOC had never met with or spoken to the child. The court responded that the FOC spoke with Ms. Kilgore at Family Matters. Sharronn then asked if they could call Ms. Kilgore. The family court called Ms. Kilgore on the phone and swore her to testify. The court then questioned her as to how the exchanges were going, and she

---

[4] The family court referred to the FOC as the GAL, although he was not the child's guardian.

said they were "quick and easy." Sharronn asked two questions of Ms. Kilgore, and the court then terminated the questioning, without objection by Reba's attorney, stating that Reba is the parent and she is going to have parenting time.

The court then indicated it was going to disconnect the call with Ms. Kilgore. Sharronn asked whether she could question if Ms. Kilgore had in fact recommended expanding parenting time to the FOC. This drew an objection from Reba's attorney that Ms. Kilgore was not a therapist, but merely a supervisor exchanger. The court sustained the objection, stating that she was a supervisor exchanger, not a custodial evaluator; that her testimony was for the purpose of seeing how the exchanges were progressing; and that was the extent of her information. Sharronn asked if she could pose another question to Ms. Kilgore. The court denied that request and disconnected the call.

There were other discussions pertaining to therapy and visitation exchanges, with Sharronn pointing out again, on the record, that the FOC still had not met the child. The Court did not allow Sharronn to ask any further questions of the FOC, stating, "No, it's 3:00. We're done with our . . . what we're going to do today. You are free to hire an attorney and file any motion that you want, but we have covered the issues that are on for today, except for the contempt, which Reba's counsel is remanding." That day, the court entered an order expanding Reba's parenting time, and Sharronn timely appealed that order.

## STANDARD OF REVIEW

This Court reviews a family court's order as to parenting time under KRS 403.320. Our review is pursuant to an abuse of discretion standard. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Trial courts are "vested with broad discretion in matters concerning custody and visitation." *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018) (citations omitted).

Under KRS 403.320(3), "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." *Anderson v. Johnson*, 350 S.W.3d 453, 455 n.1 (Ky. 2011) (citing *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008)); *Layman v. Bohanon*, 599 S.W.3d 423, 429 (Ky. 2020).

## ANALYSIS

On appeal, Reba did not file a brief. When a responsive brief has not been filed, we may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if the appellant's brief reasonably appears to

sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3). "The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Cabinet for Health & Fam. Servs. v. Loving Care, Inc.*, 590 S.W.3d 824, 826 (Ky. App. 2019) (quoting *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007)). Accepting Sharronn's statement of facts as correct, and in light of our own review, we find the events and the order of June 28, 2023, to be an abuse of discretion in several respects and therefore reverse.

On appeal, Sharronn argues that the family court erred by conducting several minutes of the hearing *ex parte*, even though she was present in the waiting room via the video conferencing link. The record does not reflect that the court or its staff checked for other parties in the video conferencing waiting room. This, Sharronn argues, constituted an improper *ex parte* communication. Kentucky Supreme Court Rule ("SCR") 4.300, Canon 2, Rule 2.9.

Secondly, Sharronn states that the motion filed by Reba for increased parenting time was not properly before the court as it was only filed the day before the hearing and thus, without sufficient notice to Sharronn that it would be heard that day.

Finally, Sharronn argues that the family court's order modifying and expanding the parenting time for Reba was not based on sufficient evidence: there was no report produced by the FOC; Sharronn was not permitted to cross-examine the FOC; and the FOC had not met with the child at any time prior to the recommendation to increase Reba's parenting time.

Having fully reviewed this hearing, we agree that there is nothing on the record showing that the court checked the video conferencing waiting room, although prior orders do indicate it had been previously used in this case. However, the family court did discuss the motion filed the day before, with Reba and her attorney, as well as the FOC, and without the knowledge or participation of Sharronn. While there is no indication that anyone was ever sworn to testify, Reba was permitted to speak and share texts. Her attorney also spoke of emails received, and he acknowledged that he filed the motion less than 24 hours earlier. A fairly substantive discussion of the status of the case occurred outside of Sharronn's presence.

Then, Reba informed the family court that Sharronn was in the waiting room. Once the court admitted her into the proceedings, Sharronn promptly asked for a continuance to obtain counsel, believing the hearing was just beginning and was, as noticed, to address the contempt motion filed against her. The court denied that request, advised Sharronn that they were not doing anything

major, but then proceeded to inform her that the FOC had recommended expanded parenting time which it was going to allow.[5]

While there were several irregularities with this proceeding, the lack of a report by the FOC and the reliance by the court upon unsworn statements of the FOC (which led to increased parenting time for Reba) without any opportunity for cross-examination by Sharronn, are the most concerning.

Pursuant to KRS 403.300, the family court appointed the FOC in these proceedings. KRS 403.300(3) provides that the clerk shall mail the investigator's report to counsel and to any party not represented by counsel at least ten days prior to the hearing. The investigator shall make available to counsel and to any party not represented by counsel his or her file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (2), and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator and any person whom he has consulted for cross-examination. A party may not waive his or her right of cross-examination prior to the hearing.

Here, there was no written report or opportunity given to Sharronn to cross examine the FOC. Before Sharronn was in the courtroom, the FOC advised

---

[5] The record indicates that the judge was simultaneously preparing the order that was ultimately entered prior to Sharronn being admitted to the room.

-12-

the court that he had spoken to Ms. Kilgore, and the FOC recommended increasing the parenting time. Once Sharronn was allowed in the room and asked to call her, the court did so, but then limited cross examination of her by Sharronn. When Sharronn questioned why the FOC had recommended increased parenting time, the FOC acknowledged that Ms. Kilgore had not actually recommended increasing visitation but had only advised that the exchange itself had gone smoothly. Again, the lack of any written report by the FOC and the failure of the FOC to meet with the child before recommending increased parenting time contradicts the court's order of May 2023.

The FOC is an important tool for family courts. However, the use of that tool has limits. In *Morgan v. Getter*, 441 S.W.3d 94 (Ky. 2014), the Supreme Court described the process to be used for such appointments. The Court discussed the broad authority of the family court to obtain assistance from various professionals to help it understand the custodial situation and make a determination as to the child's best interest. *Id.* at 104. That authority includes the ability to appoint an attorney as an FOC to investigate the circumstances on the court's behalf, to file a report summarizing his or her findings, and to make custodial recommendations. *Id.* at 112. The *Morgan* Court spelled out in great detail the differences between the roles of an FOC and a GAL. *Id.* at 114. However, both

roles are required to make full reports and to disclose those reports to the court and the parties, and both FOCs and GALs are subject to cross examination. *Id.* at 118.

The very purpose of the FOC is to act as "a child's representative appointed as an officer of the court to investigate the child's and the parents' situations, **to file a report summarizing his or her findings, and to make recommendations as to the outcome of the proceeding**." *Nein v. Columbia*, 517 S.W.3d 492, 499 (Ky. App. 2017) (citing *Morgan*, 441 S.W.3d at 111) (emphasis added). Further, in *Morgan*, 441 S.W.3d at 112, the Court held that "the parties' right to due process includes the right to cross-examine the authors, including so-called GALs, of evidentiary reports upon which the fact finder is entitled to rely."

Later, in *Greene v. Boyd*, 603 S.W.3d 231, 233 (Ky. 2020), our Supreme Court held that statements in such investigative reports generated by a court-appointed FOC may be admissible even though they contain first and second level hearsay statements. However, that is only true "*where the notice and procedural requirements comply with KRS 403.300(3)*." *Id*. (emphasis added). We find *Morgan* and *Greene* dispositive and find that neither the spirit nor the terms of KRS 403.300 were complied with herein.

As *Greene* made clear, it is only *because* of the procedural and statutory protections that such statements can serve as a basis for the family court's decisions on custody and visitation. Adherence to the statutory protections and

requirements – requiring the report to be made available to the parties at least ten days before a hearing, insisting that the source of the statements and information in the report be identified, and providing the ability to cross-examine the sources and the FOC – are all part of the due process protections required in all such proceedings.

Without those procedural safeguards, there are no due process protections. The family court cannot avoid those statutory requirements by simply calling a hearing a "review," particularly when it goes on to make substantive changes to increase the parenting time of the other party. Further, as noted above, this hearing was noticed to have been only on the contempt motion. The court cut off Sharronn's attempt to further explore the issues relative to increasing visitation. Of course, she had not even been part of the hearing for the first seven minutes when the increased visitation was discussed. Indeed, this hearing did result in an increase in Reba's parenting time, with no advance notice to Sharronn that this was even going to be the subject of the hearing, and with the court apparently making its decision on the record before Sharronn was in the courtroom.

A ruling increasing visitation must be made pursuant to KRS 403.320, in accordance with the "best interests of the child." There are several factors the courts must consider in determining whether a modification of timesharing is in a child's best interest, which are partially listed in KRS 403.270. *Childress v. Hart*,

-15-

592 S.W.3d 314, 317 (Ky. App. 2019). The relevant factors enumerated in KRS 403.270(2) include: the wishes of the parents; the wishes of the child; the relationship of the child with parents and siblings; the motivation of the adults; the child's adjustment and proximity to home, school, and community; the mental and physical health of all parties; and the likelihood that a party will allow the child frequent contact with the other parent.

No mention was made of the child's best interests in relation to the increased visitation schedule, and none of the factual findings indicated the family court considered any of the factors required to make such a determination. *Moore v. Moore*, 626 S.W.3d 535, 539 (Ky. 2021). Nowhere in the trial court's order do we discern any consideration of whether expanding visitation was in the child's best interests, nor can we say the family court ruled on the matter by implication. *Id.*

This modification of parenting time was also completed with no written report of the FOC or compliance with the notice and procedural requirements of KRS 403.300. The motion was heard without compliance with the local rules requiring notice and filing prior to a hearing. Finally, the order increasing visitation conflicts with the court's prior order just a few weeks earlier directing that the FOC would need to first interview the child and report to the

-16-

court "before any further motions to modify parenting time would be heard." That had not yet occurred, as Sharronn pointed out on the record.

One month prior to this hearing, the court stated in its order that the FOC was to interview the child, and provide a report before any further motions to modify would be considered. The FOC had not interviewed the child and did not provide a written report, but still recommended increasing the visitation which the court agreed to before Sharronn was even in the courtroom. Sharronn was not allowed to cross examine on that issue; did not have proper notice of the motion; and was not given the names and opinions of anyone else that the FOC may have consulted to support his recommendation. Finally, the order did not indicate that the family court considered the best interests of the child as required by KRS 403.320(3). Accordingly, we conclude that the family court abused its discretion when it granted expanded parenting time to Reba without compliance with the provisions of KRS 403.320 and KRS 403.300.

For the foregoing reasons, we reverse and remand this matter for proceedings consistent with those provisions.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Hugh Barrow
Louisville, Kentucky